**UNITED STATES of America**

v.

**Arthur GARRETT, Appellant in No. 77–1780.**

**UNITED STATES of America**

v.

**Angelo MORINI, Appellant in No. 77–1781.**

**UNITED STATES of America**

v.

**FIESTA FOODS, INC., Appellant in No. 77–1782.**

**Nos. 77–1780 to 77–1782.**

United States Court of Appeals, Third Circuit.

Argued Jan. 13, 1978.

Decided March 28, 1978.

Certiorari Denied May 22, 1978. See 98 S.Ct. 2265.

Blair A. Griffith, U. S. Atty., Alexander H. Lindsay and Bruce A. Antkowiak, Asst. U. S. Attys., for appellee.

David O'Hanesian, Pittsburgh, Pa., for appellants.

Before ALDISERT and HUNTER, Circuit Judges and CAHN,* District Judge.

## OPINION

HUNTER, Circuit Judge:

In this case, appellants challenge the trial judge's jury instruction on intent in their joint trial for mail fraud, 18 U.S.C. § 1341 (1970). They contend that part of the charge impermissibly shifted the burden of proof on intent from the government to the

---

\* Honorable Edward N. Cahn, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

defendants. Our review of the trial judge's charge convinces us that no reversible error was committed. We affirm.

## I.

The facts will be outlined only briefly. The defendants are Arthur Garrett, food service director at Slippery Rock State College; Fiesta Foods, Inc., a food supply company; and Angelo Morini, the president of Fiesta Foods. They were charged with using the mails in furtherance of a scheme to falsify bids to the college in order to ensure that Fiesta would be awarded supply contracts for part of Slippery Rock's food service.

At trial, the government introduced evidence that Garrett had obtained a financial interest in Fiesta Foods. The college's purchasing agent testified that purchases of perishable foods were to be made after competing bids were solicited, if the product sought was available from more than one source. The evidence indicated that Garrett had instructed food services employees to solicit the required multiple bids for pizzas from defendant Morini, with the result that Fiesta Foods was awarded the pizza contracts. Representatives of other food companies, which had been listed on college purchase orders as participating in the bidding, testified that the bids made on behalf of their companies for the pizza contract were not authorized.

Evidence of the use of the mails for submitting contracts and receiving payments for supplies was introduced by the government and not disputed by defendants. In its closing, the government contended that the evidence presented demonstrated that defendants engaged in a scheme to defraud the college and used the mails to perpetrate the scheme. The jury found each defendant guilty of eight counts of mail fraud.

## II.

The defendants' contentions in this appeal are directed solely at the following portion of the trial judge's charge to the jury:

As a general rule it is reasonable to infer that a person intends all the natural and probable consequences of an act knowingly done or knowingly omitted. So unless the evidence of a case leads you to a contrary conclusion you may draw the inference and find that the accused intended all the natural and probable consequences which one standing in like circumstances and possessing like knowledge should reasonably have been expected to result from an act knowingly done or knowingly omitted by the accused.

Counsel for defendants objected to this portion of the charge but were overruled by the trial judge.

The thrust of defendants' argument is that by instructing the members of the jury that they may infer the specific intent to defraud element of the crime of mail fraud from acts by the accused "unless the evidence leads [the jury] to a contrary conclusion," the trial judge shifted the burden onto defendants to introduce evidence of their lack of intent to defraud. Further, defendants argue that the instruction is inconsistent with other elements of the charge placing the burden of proving all elements of the crime on the government.

The Fifth Circuit has reviewed the instruction under consideration here numerous times over the last fifteen years. In *Mann v. United States*, 319 F.2d 404 (5th Cir. 1963) *cert. denied* 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964), the court held that the trial judge's use of the instruction in a prosecution for wilful evasion of income tax payments constituted plain error. In *Mann*, the court stated:

When the words "So unless the contrary appears from the evidence" were introduced [after the first sentence of the instruction], the burden of proof was thereupon shifted from the prosecution to the defendant to prove lack of intent. If an inference from a fact or set of facts must be overcome with opposing evidence, then the inference becomes a presumption and places a burden on the accused to overcome that presumption. Such a burden is especially harmful when

a person is required to overcome a presumption as to anything subjective, such as intent or wilfulness, and a barrier almost impossible to hurdle results.

319 F.2d at 409. *See also United States v. Schilleci*, 545 F.2d 519 (5th Cir. 1977); *United States v. Driscoll*, 454 F.2d 792 (5th Cir. 1972); *Henderson v. United States*, 425 F.2d 134 (5th Cir. 1970); *South v. United States*, 412 F.2d 697 (5th Cir. 1969).

Although *Mann* seemed to indicate that use of the charge in subsequent criminal cases would constitute reversible error *per se*, later Fifth Circuit cases recognized factual situations in which a conviction would not be reversed even though the "*Mann* instruction" was given. First, in *Helms v. United States*, 340 F.2d 15 (5th Cir. 1964), *cert. denied* 382 U.S. 814, 86 S.Ct. 33, 15 L.Ed.2d 62 (1965), another tax evasion case, the court refused to reverse a conviction after a jury trial in which the *Mann* instruction was given. In that case, the government introduced two sets of records, one of which was false and from which defendant's tax returns were prepared. The appeals court noted that the jury's determination of whether the defendant had prepared the two sets of books—a matter of objective conduct—was dispositive of his criminal intent. The *Mann* decision was distinguished on the ground that the jury in that case, in which intent could not be determined from objective conduct alone, could have been misled far more easily by the offensive language in the charge. *See also United States v. Durham*, 512 F.2d 1281 (5th Cir.) *cert. denied* 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102 (1975).

Another factual situation in which use of the *Mann* charge was determined not to constitute reversible error is found in *United States v. Jenkins*, 442 F.2d 429 (5th Cir. 1971). Although the same language was used in *Jenkins* as in *Mann*, the court found that curative instructions immediately following the *Mann* language vitiated any harmful effect that the challenged instruction might have on the jury.[1] *See also United States v. Roberts*, 546 F.2d 596 (5th Cir.), *cert. denied* 431 U.S. 968, 97 S.Ct. 2927, 53 L.Ed.2d 1064 (1977); *United States v. Duke*, 527 F.2d 386 (5th Cir.), *cert. denied* 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1190 (1976); *United States v. DeSimone*, 452 F.2d 554 (5th Cir. 1971), *cert. denied* 406 U.S. 959, 92 S.Ct. 2067, 32 L.Ed.2d 346 (1972).

In *United States v. Chiantese*, 560 F.2d 1244 (5th Cir. 1977), the Fifth Circuit attempted to rid itself of the recurrent appeals arising from use of the charge. Although the court refrained from mandating a rule of *per se* reversal whenever the *Mann* charge is given, the court *en banc* held prospectively that curative instructions will not be considered in determining whether a trial judge's use of the *Mann* charge is reversible.

Other circuits have criticized the language of the instruction.[2] This circuit, however, has not had occasion to pass on the challenged instruction until now. In *United States v. Restaino*, 405 F.2d 628 (3d Cir. 1968), the district court had instructed the jury on intent in language similar to that used in this case. Defense counsel timely objected to the instruction, and the district judge corrected and supplemented the charge on intent. Thus, on appeal, this court did not review the instruction.

### III.

An appellate court's role in reviewing jury instructions is to examine the

---

1. The saving elements of the charge included directives 1) that the jury was entitled to consider any statements made and acts done or omitted by the accused, and all facts and circumstances in evidence which may aid in determination of state of mind; and 2) that the law never imposes on a defendant in a criminal case the burden of calling witnesses or producing evidence. *United States v. Jenkins*, 442 F.2d 429, 438 (5th Cir. 1971).

2. *See, e. g., United States v. Robinson*, 545 F.2d 301 (2d Cir. 1976); *United States v. Diggs*, 527 F.2d 509 (8th Cir. 1975); *United States v. Woodring*, 464 F.2d 1248 (10th Cir. 1972); *United States v. Wilkens*, 385 F.2d 465 (4th Cir. 1967); *Cohen v. United States*, 378 F.2d 751 (9th Cir. 1967); *United States v. Releford*, 352 F.2d 36 (6th Cir. 1965).

entire charge in order to determine whether the district judge properly performed his function. *See Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The district judge is responsible for giving the jury the guidance by which it can make appropriate conclusions from the testimony. This duty is performed by clearly stating the relevant legal criteria. *Bollenbach v. United States,* 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946).

■ We thus must determine, in the light of the entire jury charge, whether the trial judge's use of the *Mann* instruction misled the jury by effectively imposing on defendants the burden of proving lack of intent to defraud.

As to the first sentence of the challenged instruction—"As a general rule it is reasonable to infer that a person intends all the natural and probable consequences of an act knowingly done or knowingly omitted" —defendants do not contend and we do not hold that this portion is in any way improper. Rather, defendants point to the second sentence of the charge—". . . unless the evidence of a case leads you to a contrary conclusion, you may draw . . . [the inference outlined in the first sentence]" as containing what they assert to be the impermissible, "burden-shifting instruction." Although it has been suggested that the instruction does not have the effect of shifting the burden of proof to the defendant,[3] it is possible that a jury might construe the second sentence of the instruction as an invitation to presume the requisite intent in the absence of rebuttal evidence introduced by defendant. The instruction's prolixity serves only to confuse the jurors and adds little to their understanding of the legal criteria they must apply, "since insofar as the statement has logical validity the jury would know it anyhow." *United States v. Barash,* 365 F.2d 395 (2d Cir. 1966).

In this case, however, the instructions *as a whole* fully informed the jury of the government's burden of proof on the question of intent. The jury was instructed on the following:

1) the law presumes the defendants to be innocent of a crime;

2) the presumption of innocence alone is sufficient to acquit unless the jurors are satisfied beyond a reasonable doubt of a defendant's guilt;

3) the burden is always on the prosecutor to prove guilt beyond a reasonable doubt;

4) this burden never shifts to a defendant;

5) a defendant is never under a burden or duty of calling any witnesses or producing any evidence;

6) the burden is on the government to establish the guilt of a corporate defendant, just as in the case of an individual defendant;

7) the prosecution has the burden of proving beyond a reasonable doubt that the defendants knowingly did an act forbidden by law purposely intending to violate the law; and

8) that such intent may be determined from all the facts and circumstances surrounding the case.

We hold, in light of these instructions, that the trial judge properly informed the jury of the government's burden of proof on the issue of intent and that the potentially harmful effect of the *Mann* instruction was vitiated. Thus we find no reversible error in this case arising from the use of the *Mann* instruction.

### IV.

Notwithstanding our holding in this case, the confusing nature of the instruction's language and the extent of judicial time spent reviewing charges containing the *Mann* instruction convinces us to prohibit its use in criminal trials commenced ninety days after the filing of this opinion.

---

**3.** *See United States v. Chiantese,* 560 F.2d 1244, 1256 & 1259 (5th Cir. 1977) (Hill, J., concurring) (Ainsworth, J., dissenting).

Hereafter, district courts in this circuit shall not use language in instructions that reasonably can be interpreted as shifting the burden to the accused to produce proof of innocence. This includes charges indicating that the law *presumes* a person to intend the natural and probable consequences of his knowing acts, as well as charges substantially similar to that given in this case.[4] Use of this instruction will be deemed error, and convictions obtained in trials in which the instruction is given will be reversed, except in those "very extraordinary circumstances [in which] the error may be found so inconsequential as to avoid the necessity of reversal on appeal." *United States v. Fioravanti*, 412 F.2d 407, 420 (3d Cir. 1969).

Certainly, the use of particular language in charging the jury is left to the sound discretion of the trial judge. *See United States v. Bailey*, 451 F.2d 181 (3d Cir. 1971); *Government of the Virgin Islands v. Rivera*, 439 F.2d 1126 (3d Cir. 1971). Further, a trial judge should tailor his instructions to a particular case and not rely too heavily on form instructions. *See United States v. Barber*, 442 F.2d 517 (3d Cir. 1971). Nevertheless, the charges outlined in Devitt & Blackmar, Federal Jury Practice and Instructions § 14.13 (1977 ed.)[5] and in *United States v. Wilkinson*, 460 F.2d 725 (5th Cir. 1972),[6] may be of some help to trial judges in avoiding the use of instructions on intent that might be construed by a jury to shift the burden of proof to the defendant in a criminal case.

We repeat and emphasize that this decision with respect to the *Mann* instruction shall have only prospective application in those jury trials which shall commence ninety days after this opinion is filed.

The judgments of conviction will be affirmed.

---

**4.** *See United States v. Chiantese*, 560 F.2d 1244 (5th Cir. 1977).

**5.** The instruction prepared by Devitt & Blackmar is as follows:

> Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statement made and done or omitted by the defendant, and all other facts and circumstances in evidence which indicate his state of mind.
>
> You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. As I have said, it is entirely up to you to decide what facts to find from the evidence.

1 Devitt & Blackmar, *Federal Jury Practice & Instructions* § 14.13 (1977 ed.).

**6.** The *Wilkinson* court suggested the following language:

> It is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts. The jury may draw the inference that the accused intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the government has proved beyond a reasonable doubt that the defendant possessed the required criminal intent.

*United States v. Wilkinson*, 460 F.2d 725, 733.