UNITED STATES of America

v.

**Stanley APFELBAUM, Appellant.**

**No. 77–2427.**

United States Court of Appeals,
Third Circuit.

April 28, 1980.

Robert N. deLuca, U. S. Atty., Robert J. Erickson, Vincent L. Gambale, Attys., Robert E. Madden, Sp. Atty., Dept. of Justice, Washington, D. C., for appellee.

Joel Harvey Slomsky, Philadelphia, Pa., for appellant.

Before ADAMS, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

This case comes before us on remand from the Supreme Court for further proceedings in conformity with its opinion reversing this court's judgment in *United States v. Apfelbaum*, 584 F.2d 1264 (3d Cir.

1978). *See United States v. Apfelbaum*, —— U.S. ——, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980).

Stanley Apfelbaum was convicted of two counts of knowingly making false material declarations before a grand jury in violation of 18 U.S.C. § 1623 (1976). Apfelbaum, then an administrative assistant to the District Attorney in Philadelphia, had appeared as an immunized witness before a federal grand jury investigating racketeering and extortion in the operation of a Philadelphia automobile dealership. On direct appeal before us, Apfelbaum presented five contentions of error: (1) that his Fifth Amendment privilege was violated when the government introduced at trial immunized grand jury testimony in addition to those statements that formed the basis of the false swearing charge; (2) that his Fifth Amendment privilege was violated because the grand jury that returned the perjury indictment was the same grand jury that heard his immunized testimony initially; (3) that the district court's jury instructions improperly shifted the burden of proof on the issue of intent to Apfelbaum; (4) that the district court erred in ruling that the government could cross-examine Apfelbaum's character witnesses with reference to a newspaper article containing charges that Apfelbaum had attempted to "fix" a case while working for the Philadelphia District Attorney; and (5) that the district court improperly permitted a constructive amendment of the indictment by allowing the government to introduce evidence of the falsity of certain grand jury testimony other than those statements specifically charged in the perjury indictment.

Reaching only the first two of Apfelbaum's contentions, we reversed his conviction. We held that the Fifth Amendment proscribed the use of any immunized grand jury testimony, at a trial for false swearing, with the exception of those false statements that formed the basis of the charge and were included in the indictment.[1] The Su-

---

1. We rejected Apfelbaum's second contention of error on the ground that his claim of preju- dice was inadequately supported in the record. *See* 584 F.2d at 1272.

preme Court reversed our ruling and held that the use of the immunized testimony was proper. In light of this holding, we must now reach the remaining three claims of error presented by Apfelbaum on his original appeal. We conclude that none of the remaining contentions has merit, and that his conviction must therefore be affirmed.

## I.

The first of Apfelbaum's remaining claims challenges the district court's use of the following jury instruction on intent:

So unless the evidence points otherwise, it is reasonable to infer and a jury may conclude that one intends the natural and probable consequences of an act which one standing in like circumstances and possessing like knowledge would reasonably have expected to result from an act knowingly done.

(tr. at 436).

Apfelbaum contends that this instruction, known as the *Mann* charge after *United States v. Mann*, 319 F.2d 404 (5th Cir. 1963), *cert. denied*, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964), constitutes a violation of due process under *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). He contends that the instruction impermissibly tends to shift the burden of persuasion to the defendant to prove that he did not have the specific intent required under the statute, and thus relieves the government of its burden to prove each element of the offense beyond a reasonable doubt.

We recently gave consideration to the *Mann* charge in *United States v. Garrett*, 574 F.2d 778 (3d Cir.) *cert. denied*, 436 U.S. 919, 98 S.Ct. 2265, 56 L.Ed.2d 759 (1978). We noted that the charge had an unfortunate burden-shifting tendency, but found that several additional instructions given by the court in that case had the effect of counterbalancing any tendency to improperly shift the government's burden. We thus held that "the instructions *as a whole* fully informed the jury of the government's burden of proof on the question of intent," 574 F.2d at 782 (emphasis in original) and did not constitute reversible error.[2] Accordingly, Garrett's conviction was affirmed. To prevent jury confusion in future cases, however, and to avoid needless expenditure of judicial resources at the appellate level, we declared in *Garrett* that the *Mann* charge could not be used by the district courts of this Circuit in any trials beginning ninety days after the date of decision, March 28, 1978.

Since Apfelbaum's trial was completed in September, 1977, *Garrett's* prospective prohibition against a *Mann* instruction does not apply to his case. Thus, we must review the jury instructions as a whole, as the court in *Garrett* did, to determine whether the trial judge properly instructed the jury of the government's burden, or, put another way, whether the *Mann* charge resulted in a fatal taint. Having reviewed the charge as a whole, we find that the district court gave each of the relevant curative instructions found sufficient in *Garrett* to withstand

---

2. The additional instructions which were given to the jury in *Garrett*, and which resulted in the court's conclusion that the *Mann* charge was harmless in that case, were:

1) the law presumes the defendants to be innocent of a crime;

2) the presumption of innocence alone is sufficient to acquit unless the jurors are satisfied beyond a reasonable doubt of a defendant's guilt;

3) the burden is always on the prosecutor to prove guilt beyond a reasonable doubt;

4) this burden never shifts to a defendant;

5) a defendant is never under a burden or duty of calling any witnesses or producing any evidence;

6) the burden is on the government to establish the guilt of a corporate defendant, just as in the case of an individual defendant;

7) the prosecution has the burden of proving beyond a reasonable doubt that the defendants knowingly did an act forbidden by law purposely intending to violate the law; and

8) that such intent may be determined from all the facts and circumstances surrounding the case.

574 F.2d at 782.

reversal. *See* note 2 *supra.* Thus, like the *Garrett* court, we find no reversible error in the use of the *Mann* charge in this case.

## II.

■ In his second remaining claim of error, Apfelbaum challenges a ruling of the district court on the permissible scope of cross-examination by the government of certain defense witnesses. Apfelbaum intended to call a number of character witnesses to testify to his excellent reputation in the community for truth and veracity. Such testimony is permitted by Fed.R.Evid. 405(a). This rule provides:

(a) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

The government stated that if Apfelbaum called his character witnesses, it intended to cross-examine these witnesses by inquiring into their familiarity with a newspaper article appearing in the Philadelphia Inquirer on July 11, 1975. The article described charges made by an assistant district attorney in Philadelphia that Apfelbaum, administrative assistant to the Philadelphia District Attorney, had attempted to "fix" a case, and recounts Apfelbaum's flat denials of these allegations. The district court ruled that the government would be allowed to confront the witnesses with this article and to use the article in cross-examination. The ruling resulted in Apfelbaum's decision not to call the character witnesses. Apfelbaum then moved for a mistrial. The motion was denied. Apfelbaum now asserts that the trial judge's ruling constitutes reversible error. We disagree.

■ Rulings on the permissible scope of cross-examination in this context are within the sound discretion of the district court, and may only be reversed for abuse of that discretion. We find no abuse here. Apfelbaum offered the character witnesses to testify to his reputation for truth and veracity. The article, to the extent that it relates Apfelbaum's denial of a public accusation, concerns an event that implicates his reputation for veracity. Thus, the familiarity of these witnesses with the substance of this article is relevant to their qualifications to testify on Apfelbaum's reputation for truth and veracity. Therefore, cross-examination to determine their familiarity with the charges contained in the article is not improper *per se*, though, of course, careful instructions to the jury as to the appropriate use of such cross-examination would be required, if Apfelbaum had called his character witnesses and the government had cross-examined them in the proposed fashion. *See Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).[3] We therefore hold the district court did not abuse its discretion in ruling that this cross-examination would be allowed.

## III.

In his final claim of error, Apfelbaum contends that the district court improperly permitted a constructive amendment of the indictment. We do not agree.

■ In the indictment, Apfelbaum was charged with making two false statements to the grand jury: (1) that he had not tried to locate one Harry Brown while in Florida in December, 1975; and (2) that he had *never told anyone* that he had lent $10,000

---

**3.** In *Michelson* the Court noted that the discretion to allow relevant cross-examination "is accompanied by heavy responsibility on trial courts to protect the practice from any misuse." 335 U.S. at 480, 69 S.Ct. at 221. The safeguards emphasized in that case included (1) clearly instructing the jury that they were to consider any incidents brought out in cross-examination only for purposes of assessing the witness' standard of opinion of the character trait at issue of the defendant, *id.* at 472 n.3, 69 S.Ct. at 216 n.3; (2) ascertaining out of the presence of the jury "that counsel was not merely taking a random shot at a reputation imprudently exposed or asking a groundless question to waft an unwarranted innuendo into the jury box," *id.* at 481, 69 S.Ct. at 221; and (3) ensuring that the questioning was relevant to the character trait asserted. *See id.* at 484, 69 S.Ct. at 222.

to Harry Brown. Apfelbaum had also testified before the grand jury that he had not lent $10,000 to Harry Brown or anyone else. The indictment did not charge that this testimony was false. In the course of its case in chief, the United States introduced evidence, over defense objection, that demonstrated that this latter aspect of Apfelbaum's grand jury testimony was also false —that, despite his testimony to the contrary, he had in fact *participated in a $10,-000 loan transaction* involving Harry Brown and Philadelphia District Attorney Fitzpatrick.[4] Apfelbaum contends that the district court's admission of evidence showing the falsity of this last item of testimony, which testimony is not charged as perjurous in the indictment, constitutes a constructive amendment of the indictment in violation of our holding in *United States v. Crocker*, 568 F.2d 1049 (3d Cir. 1977). His claim is without merit.

In *Crocker*, the defendant was charged with making false statements to a grand jury. The grand jury had been investigating a payoff scandal in the recording industry and Crocker was asked under oath whether he had accepted payment from two different individuals. His denial of payments from these two persons was charged in the indictment as knowingly false. At trial, however, the government introduced evidence that Crocker received money from a *third* individual. This court held that this was a constructive amendment of the indictment:

> We are convinced that our constructive amendment analysis of the *Stirone* [*v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960)] holding is correct. Applying the *Stirone* principle to this case, we are compelled to hold that when a grand jury has specifically charged the manner in which testimony is untruthful, permitting the government to prove that it is untruthful in an entirely different manner amounts to a constructive

amendment of the indictment rather than a mere variance.

568 F.2d at 1060.

Apfelbaum's case bears no resemblance to *Crocker*. Apfelbaum's indictment stated the manner in which his testimony was alleged to be false, that, contrary to his testimony, he *had* tried to locate Brown in Florida, and *had* told the FBI that he had lent $10,000 to Brown. The government proved that this testimony was false in precisely the way charged in the indictment; it did not seek to prove that it was "untruthful in an entirely different manner," 568 F.2d at 1060, from that charged. The loan transaction on which the United States introduced evidence was directly related to establishing the falsity of the declarations which were charged in the indictment to be false. *Crocker* does not prohibit the introduction of circumstantial evidence which is necessary to prove that a defendant lied in precisely the fashion that is charged in the indictment. To read *Crocker* this way would prohibit the use of almost all evidence relevant to proving an element of the crime of perjury, if this evidence also serves to prove the falsity of certain grand jury testimony which is not included in the indictment. *Crocker* cannot be read so broadly. We thus conclude Apfelbaum's last contention has no merit.

IV.

The Supreme Court's reversal of our holding in *United States v. Apfelbaum*, 584 F.2d 1264 (3d Cir. 1978) requires us to set aside our original judgment which reversed Apfelbaum's conviction and remanded the case to the district court for a new trial. The reversal also requires us to consider three claims of error raised by Apfelbaum that we did not resolve in our first consideration of his appeal. Having reviewed these contentions, and finding them to be without merit, we now vacate our initial judgment entered August 10, 1978. We will also remand this case to the district court with the direction that its original judgment of conviction be reinstated.

---

4. Some of the government's proof also tended to demonstrate the falsity of other, less significant, grand jury testimony of Apfelbaum that had not been included in the indictment.