672 P.2d 188

**The STATE of Arizona, Appellee,**

v.

**Bobby Joe RAINEY, Appellant.**

**No. 2 CA–CR 2872.**

Court of Appeals of Arizona, Division 2.

June 14, 1983.

Rehearing Denied Oct. 4, 1983.

Review Denied Nov. 18, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Lawrence H. Fleischman, Asst. Public Defender, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

Appellant, convicted by a jury of unlawful possession of an electrical device while riding in a horse race, was placed on two years' probation.

Appellant rode the winning horse in the sixth race at Rillito Downs on February 6, 1982. Frank Barrios, racing commission investigator, watched appellant walk from the winner's circle to a jockey room. He was particularly interested in appellant from information he had before the race started and had the authority to conduct an on-the-spot search of appellant. He was accompanied by John Vanover, who was also an investigator for the commission. They followed appellant into the training room area and when appellant spotted Barrios he threw a black object to the ground. Barrios and Vanover retrieved the object which turned out to be an electrical device which gave a "terrific jolt."

Appellant was asked to accompany Barrios and Vanover to the racing commission office at the track. In the office, before anything was said, Barrios handed the illegal device to the other investigator. As he did so, appellant stated: "It's a cheap one."

Appellant took the stand at trial and denied having the device. He also called character witnesses in his favor.

Appellant called as a character witness Charles Sacatello, a jockey, who testified that in his opinion appellant was an honest person. Sacatello was asked on cross-examination by the prosecution whether he knew that appellant had been cited by the racing commission for filing a frivolous foul claim. He said that he did and it wouldn't change his opinion. He also gave an explanation of the term "frivolous foul claim":

"Q. Tell me about it; what does it mean?

A. Well, if you have a horse—you are riding a race, you have a horse bump you, you have that right to claim a foul if you choose.

Q. Does it mean it's not a good-faith claim?

A. Sure, you may claim foul against the wrong one sometimes, but this happens. It's a normal thing. It happens.

Q. You do it, too.

A. Yes, sir, I have."

Appellant, on direct examination, explained the meaning of the term:

"A. That's when two parties disagree when they're running in a horse race. Like if I was on the rail and another competitor on my right trying to pass me, if he cut over in front of me before he had clearance, that would be a time I could call the stewards after the race and complain that he didn't give me the right-of-way I should have had. And the stewards would review the films.

After they review the films they would send down their decision either that the man did foul me or he didn't. And if they say no, he didn't foul me, they would consider that a frivolous claim of foul."

Because of the cross-examination of the character witness, appellant offered the following instruction which the court refused to give:

"Where on cross-examination a witness is asked if he has heard of reports of certain conduct of the defendant inconsistent with the traits of good character as to which the witness has testified, such questions and the witness' answers thereto may be considered only for the purpose of determining the weight to be given to the opinion of the witness or to his testimony as to the good reputation of the defendant.

Such questions and the answers thereto are not evidence that the reports are true

and you must not speculate from them that the defendant did in fact conduct himself inconsistently with such trait of character."

■ Appellant contends that the state, in its cross-examination of Sacatello, asked an improper question when it asked "Do you know" instead of "Have you heard." He further contends that the trial court erred in refusing his instruction. We do not agree.

Prior to the adoption of the Arizona Rules of Evidence by our supreme court, a reputation witness as to the character trait of honesty could be asked, for example, "Have you heard about the defendant's arrest for theft?" Because such a witness was reporting only on what he had heard, the same question prefaced with "do you know" was held improper. Now, Rule 405, Arizona Rules of Evidence, 17A A.R.S., allows proof of character either by reputation or opinion. Since the witness can, under the rule, give his opinion on a character trait, the question "Do you know about defendant's arrest for theft?" is permissible. See *Government of Virgin Islands v. Roldan,* 612 F.2d 775 (3rd Cir.1979), cert. den., 446 U.S. 920, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980) and see also, M. Udall and J. Livermore, Law of Evidence § 83 at 173–74 (1982).

■ Rule 405(a), Arizona Rules of Evidence, 17A A.R.S., also provides that on cross-examination, inquiry is allowable into relevant specific instances of conduct. We hold that whenever an exception under Rule 405 allows introduction of prior bad acts, the defendant is entitled to a limiting jury instruction in which the jury is told that they are to consider any incidents brought out in cross-examination only for the purposes of assessing the witness' standard of opinion of the character trait at issue. *United States v. Apfelbaum,* 621 F.2d 62 (3rd Cir.1980); *Government of Virgin Islands v. Roldan,* supra; *United States v. Tempesta,* 587 F.2d 931 (8th Cir.1978), cert. den. 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979); cf., *State v. Canedo,* 125 Ariz. 197, 608 P.2d 774 (1980).

■ The instruction offered, CALJIC 2.42, applies to "have you heard" cross-examination, which was not the case here. Furthermore, the second paragraph of the instruction is inapplicable when the defendant testifies and admits the conduct, as he did in the instant case. Since the instruction was incorrect because of its inapplicability to the factual posture of the case, the trial court did not err in refusing to give it.

■ In any event, the filing of a frivolous foul claim was, according to the only testimony elicited at trial, clearly irrelevant since it did not bear in any way upon appellant's honesty. It is not fundamental error to fail to give a limiting instruction in this situation. *Government of Virgin Islands v. Roldan,* supra. Assuming arguendo that the instruction should have been given, we find any error to be harmless in view of the explanation made by the witnesses and by the fact that the prosecutor never referred to the conduct in his final argument, perhaps recognizing its irrelevancy.

Appellant next contends the court erred in denying his motion for mistrial based upon statements made by the prosecutor during his final argument. We do not agree. Appellant's counsel argued in his summation to the jury that no witnesses ever saw appellant use the electrical device during the race. In response to this argument, the prosecutor stated, "You won't hear any jury instruction saying the State has to prove the Defendant used that item during a race. Do you know what this is? This is *deceiving.*" (Emphasis added.) The prosecutor also turned to photographs taken by appellant and made the following remark:

"Mr. Minker tells you about the investigation he did on the case. Remember I showed him all these photographs. Are there any photographs in there that accurately showed you the area of the jockey room or the door of the jockey room or the actual width of the hedge? All those photographs are *deceiving.*" (Emphasis added.)

The prosecutor also labeled another of appellant's arguments as "a little deceiving"

and asked the jury to listen to the definition of the offense that was going to be given by the court and to "consider the word deceiving in this case."

 Appellant contends that the prosecutor's remarks constituted an unwarranted personal attack on his attorney. We do not agree. It has long been the rule in Arizona that counsel for both sides have considerable latitude in their arguments to the jury and that the granting or denial of a mistrial based upon such remarks is usually within the sound discretion of the trial court. *State v. Gregory,* 108 Ariz. 445, 501 P.2d 387 (1972). It is also true that an improper comment by the state's attorney can result in a mistrial and abuse of opposing counsel, unwarranted by the evidence, is not within the scope of proper argument and if carried too far may result in the granting of a new trial or reversal. *State v. Gregory,* supra. However, in the closing argument excessive and emotional language is the bread and butter weapon of counsel's forensic arsenal, limited by the principle that attorneys are not permitted to introduce or comment upon evidence which has not previously been offered and placed before the jury. *State v. Gonzales,* 105 Ariz. 434, 466 P.2d 388 (1970). We do not believe that the remarks of the prosecuting attorney were as inflammatory or derogatory as the defendant contends and we find no error.

 Appellant's next alleged error concerns the admission into evidence of his statement "It's a cheap one." Relying on *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), appellant contends that the handing over of the electrical device by Barrios to Vanover in appellant's presence, prior to the giving of any Miranda warnings, was the functional equivalent of interrogation and that his statement should have been suppressed. We do not agree. In *Rhode Island v. Innis,* supra, the Court stated:

"We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (Footnotes omitted.) 446 U.S. at 301–302, 100 S.Ct. at 1690.

Appellant here was not subjected to the "functional equivalent" of questioning. It cannot be said that Barrios should have known when he handed the electrical device to Vanover in appellant's presence the action was reasonably likely to elicit an incriminating response from appellant.

 Appellant's last contention is that the trial court should have granted his motion for a directed verdict of acquittal. He was charged with violation of A.R.S. § 5–115(A)(3) which provides:

"*At any racing meeting conducted under the provisions of this article,* a person is guilty of a class 4 felony, if he:

\* \* \* \* \* \*

3. Knowingly has in his possession or in use, while riding or driving in any horse race, any mechanical or electrical device other than an ordinary whip . . . ." (Emphasis added.)

Appellant contends there was no evidence that the race meeting was conducted under "the provisions of this article," which re-

quire, inter alia, a valid permit issued by the racing commission. A.R.S. § 5–107.01. The trial court denied the motion for acquittal because it believed there was enough circumstantial evidence to show that the racing meeting was being so conducted. The trial court reasoned that Rillito Downs was running a sanctioned race, under a permit, because racing commission investigators were present and would have been required to suspend the racing had the situation been otherwise. It further noted that it would defy common sense to infer that licensed jockeys, trainers and others who had testified at trial would all be participating in an unsanctioned meet on that day. Furthermore, it should be noted that A.R.S. § 5–106(J) requires that the racing commission have licensed stewards present at every race meeting and that such stewards were monitoring the race that day. We agree with the trial court's conclusion that the circumstantial evidence sufficed.

Affirmed.

HATHAWAY and BIRDSALL JJ., concur.