**ELWIN JOYCE, Appellant,**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee.**

D.C. Crim. App. No. 2003-57

District Court of the Virgin Islands

Division of St. Thomas

October 20, 2005

ANDREW L. CAPDEVILLE, ESQ., St. Thomas, U.S.V.I., *For Appellant*.

MATTHEW C. PHELAN, ESQ., St. Thomas, U.S.V.I., *For Appellee*.

FINCH, *Chief Judge of the District Court of the Virgin Islands*; MOORE,[1] *Judge of the District Court of the Virgin Islands*; and DONOHUE, *Judge of the Superior Court, Division of St. Croix, sitting by designation.*

## MEMORANDUM OPINION

(October 20, 2005)

Appellant, Elwin Joyce, was convicted in the Superior Court of the Virgin Islands [hereinafter "Superior Court"][2] on three counts, specifically one count of rape in the first degree, pursuant to V.I. CODE ANN. tit. 14 § 1701(2) and two counts of unlawful sexual contact, pursuant to 14 V.I.C. § 1708(1). Joyce now appeals his conviction on Count I, rape in the first degree. He contends on appeal that the trial court committed reversible error in giving a flawed jury instruction with

---

[1] Judge Moore retired on January 3, 2005. Before leaving the bench, he reviewed this opinion and agreed in full with the panel's decision.

[2] At all times relevant to this petition, the lower court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, we employ the terms Superior Court and Superior Court Judge.

regard to intent, essentially relieving the government's burden of proving the mens rea element of the offense and thus violating his due process rights. For the reasons stated below, we find no plain error on the trial record and will affirm the conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND:

The defendant, Elwin Joyce ("Joyce"), was a long time family friend of Carlene Ritter Thomas. [Appellee Appendix ("Appellee App.") at 1-110]. Ms. Thomas is the mother of the victim, Rhatonda Saddler. ("Saddler") [*Id.* at 106]. When Saddler was seventeen years old, she went to a Calypso show at the Lionel Roberts Stadium in St. Thomas, Virgin Islands with Joyce and his family. [*Id.* at 83, 88]. Saddler was not married at the time. [*Id.* at 83].

While they were watching the show, Joyce told Saddler that he wanted to talk to her. [*Id.* at 21-6]. Joyce and Saddler went to his jeep, which was parked in a parking lot next to the stadium. [*Id.* at 29]. Joyce opened the jeep and Saddler got into the back seat of the jeep. [*Id.*]. Joyce sat next to Saddler. [*Id.*]. Saddler testified that once inside the jeep, Joyce forced her to lay down by pushing her with his hands. [*Id.* at 31]. According to Saddler, the defendant used very hard force in pushing her down and she was unable to resist him. [*Id.* at 33]. He then pulled off her panties and lifted up her dress, pulled his own pants off, pulled her legs apart and then inserted his penis into her vagina while he was on top of her. [*Id.* at 137-8]. She also testified that Joyce touched her breast and her vagina with his hands, without her consent. [*Id.* at 36, 44-6]. Saddler explained that at one point Joyce stated to her that she belonged to him, he was a jealous man and he was going to kill her. [*Id.* at 41]. Saddler testified that she did not consent and tried repeatedly to push him off her. [*Id.* at 34, 37, 40, 41 & 46, 89]. Joyce did not hit Saddler at any time. [*Id.* at 87-8]. She did not have any scratches or bruises. [*Id.*]. There was no damage to Saddler's clothing. [*Id.* at 50]. She testified that she could not yell or scream because the windows were up on the Jeep. [*Id.* at 97].

After Saddler put her clothes on, Joyce gave her $20.00. [*Id.* at 48-9]. Saddler then returned to the stadium alone. [*Id.* at 49]. Saddler testified that Joyce's wife asked Saddler what had happened and Saddler said that Joyce had either 'touched' or 'raped' her. [*Id.* at 52-3, 83, 99]. According to Saddler, the defendant's wife then stated to her own daughter that the defendant had just raped the victim and told her to go and look for him.

[*Id.* at 54]. The defendant's wife then confronted the defendant, asking how he could do this to a schoolgirl. [*Id.* at 55]. The victim was driven straight home, where she immediately took a shower. [*Id.* at 52-3]. On Monday, May 4, 1998, Saddler initially told her mother that Joyce had touched her breast, but afterwards told her that Joyce had raped her. [*Id.* at 62-3]. Saddler testified that she was ashamed to tell her mother the entire truth at first. [*Id.*]. She testified that she told the whole story when the police officers came to her house. [*Id.*].

The victim's mother testified that the defendant apologized to her (the mother) on the following Monday, saying he was sorry he had done it, that he was drunk, and begging her not to call the police. [*Id.* at 126-7]. Joyce testified that on April 30, 1998, he did in fact have sex with Saddler in the jeep. [*Id.* at 2-249]. He also testified that he had consensual sex with Saddler in January of 1998. [*Id.* at 2-235-6].

On the Tuesday following the incident, Saddler's Pediatrician, Dr. Pak, examined her. [*Id.* at 1-71]. The next day Dr. Lockridge saw her. [*Id.* at 72]. Dr. Lockridge testified as an expert in the field of pediatrics. [*Id.* at 2-144]. Her examination of the victim led her to the diagnosis that the victim had been sexually abused or assaulted. [*Id.* at 160, 169, 190, 219, 223].

During the trial, the trial judge discussed the jury instructions with both parties on five separate occasions. [*Id.* at 2-260-303, 307-25, 339-42, 398-99, 413-415, 432]. The trial court gave the following jury instruction on intent for the rape count:

> Now in determining the defendant's intention, the law assumes that every person intends the natural consequences of his voluntary acts. Therefore, the general intent required to be proved as an element of rape in the first degree is inferred from the defendant's voluntary commission of the act forbidden by law and it is not necessary to establish that the defendant knew that his act was a violation of that law.

[*Id.* at 414]. During the course of the trial and prior to the case going to the jury, the defendant did not raise any objections to this jury instruction on general intent.

On January 28, 1999, the jury found Joyce guilty of rape in the first degree by forcible compulsion, and two counts of unlawful sexual contact. Joyce has appealed Count I of his conviction, rape in the first

degree, and challenges the trial court's jury instruction as to the mens rea element of this crime. Joyce argues that the trial court erred by excluding the mens rea element from the jury charge, thereby leading a reasonable jury to believe that (1) it must find Joyce guilty if it found that he voluntarily had sexual intercourse with Saddler, or (2) the burden was upon him to prove that he did not rape Saddler. We disagree with the appellant and affirm the conviction below.

## II. JURISDICTION AND STANDARD OF REVIEW

### A. Jurisdiction

This Court has jurisdiction to review judgments and orders of the Superior Court in all criminal matters in which the defendant has been convicted, other than on a plea of guilty. *See* The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004), which repealed 4 V.I.C. §§ 33-40, and reinstating appellate jurisdiction provisions); Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a.[3]

### B. Standard of Review

Where an objection to jury instructions was not made at trial in accordance with FED. R. CRIM. P. 30, appellate review is for plain error only.[4] FED. R. CRIM. P. 52(b); *Government of the V.I. v. DuBois*, 25 V.I. 316, 323 (D.V.I. App. Div. 1990).

Plain errors are those that "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *United States v. Young*, 470 U.S. 1, 16, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985). The Supreme Court has cautioned that the plain error exception should be used sparingly. *United States v. Frady*, 456 U.S. 152, 163 n.14, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). Nonetheless, the plain error doctrine should be employed to protect the integrity of the judicial process from

---

[3] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. Tit. 1).

[4] FED. R. CRIM. P. 30 states that "failure to object [to a jury instruction] ... precludes appellate review, except as permitted under Rule 52(b)." FED. R. CRIM. P. 52(b) states that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."

erosion and should be invoked when necessary to correct obvious injustices. *Id.*

■ The Supreme Court has delineated its own test for plain error. *United States v. Olano*, 507 U.S. 725, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). Under the Supreme Court *"Olano"* test, the Court must find: (1) an error; (2) that was clear or obvious; and (3) that affected the substantial rights of the defendant. *Id.* at 725. Only upon fulfilling the first three criteria may the appellate court exercise discretion to correct the error, and then only if the error "seriously affects the fairness, integrity or public reputation of the judicial proceedings." *Id.* (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S. Ct. 391, 80 L. Ed. 555 (1936). The Third Circuit Court of Appeals has adopted the *Olano* plain error test.[5] *See United States v. West Indies Transport, Inc.*, 127 F.3d 299, 302, 37 V.I. 579 (3d Cir. 1997); *see also Rosa v. Government of the V.I.*, 399 F.3d 283 (3d Cir. 2005).

With these basic principles in mind, we turn to the instant case.

## III. ANALYSIS

### A. The Error as to the General Intent Instruction was Not Waived By Appellant, but Rather Forfeited and Therefore it Can Be Raised on Appeal

■ An "error" is a deviation from a legal rule where that legal rule has not been waived. *Olano*, 507 U.S. at 732-33. Therefore, under the first prong of the *Olano* test, it must be determined whether the appellant, in not objecting to the general intent jury instruction at trial, waived, rather than merely forfeited, his right to raise that issue on appeal.[6] Waiver is

---

[5] Prior to the *Olano* test, courts in this jurisdiction have looked at the following factors when conducting a plain error analysis: (1) whether the error was obvious; (2) the significance of the interest protected by the violated rule; (3) the seriousness of the error; (4) the effect of the error on the reputation of the judicial proceedings. *United States v. Thame*, 846 F.2d 200 (3d Cir. 1988); *Government of the V.I. v. Smith*, 949 F.2d 677, 681, 27 V.I. 332 (3d Cir. 1991); *Government of the V.I. v. Mujahid*, 990 F.2d 111, 116, 28 V.I. 284 (3d Cir. 1993).

[6] The particular right in question must be waivable in order for the waiver to be valid. *Olano*, 507 U.S. at 733. Both this jurisdiction and the Third Circuit have concluded that a defendant may waive the right to contest a jury instruction. *See Government of the V.I. v. Knight*, 989 F.2d 619, 28 V.I. 249 (3d Cir. 1993); *see also Rosa*, 399 F.3d at 291 n.6 (citing *United States v. Perez*, 116 F.3d 840, 845 n.7 (9th Cir. 1997)).

different from forfeiture. The Supreme Court in *Olano* defines forfeiture as "the failure to make a timely assertion of a right." *Id.* at 733. In contrast, waiver is defined as the "intentional relinquishment or abandonment of a known right." *Id.* (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)).

The absence of a timely objection does not automatically indicate waiver. *Id.* Courts of Appeals in other jurisdictions have found that a defendant's failure to object can constitute a waiver if it is deemed to be an intentional tactical act. *See United States v. Yu-Leung,* 51 F.3d 1116, 1122-23 (2d Cir. 1995) (court finds that defendant waived the error, as his lack of objection to the error was considered tactical in nature when the defendant objected to other similar types of errors during trial); *see also United States v. Salerno,* 108 F.3d 730, 735 (7th Cir. 1997) (court finds that defendant waived the error, as lack of objection to the error was considered tactical when, even though the defendant objected to the admission of evidence, he did not request a limiting instruction and affirmatively accepted the court's final jury instructions). Additionally, in *Government of the V.I. v. Rosa,* the Third Circuit Court of Appeals has held that in situations where the appellant has failed to object to an error in the trial court, such an omission can constitute waiver if the appellant was aware of the relinquished right, or knew yet intentionally chose to abandon this right. *Government of the V. I. v. Rosa,* 399 F.3d 283, 291 (3d Cir. 2005).

Considering the facts of this case, there is nothing on the record to suggest that the appellant knowingly relinquished the erroneous jury instruction resulting in waiver. Rather, similar to the holding in *Rosa,* the appellant's failure to object, and his agreement to the general intent instruction on five separate occasions, was indicative of a lack of awareness of the correct instruction.

In *Rosa,* the court of appeals considered whether the failure of the appellant to object to the erroneous jury instruction for first-degree murder constituted waiver or forfeiture of that error. *Id.* at 290-93. The court in *Rosa* found no waiver, as the appellant's failure to object to the erroneous instruction, as well as his agreement to the instruction on three separate occasions, was due to his lack of awareness of the correct rule of law, or if aware, his failure to realize that the intent instruction was a misstatement. *Id.* at 291. As the court further explained, "[t]here is no indication that [Rosa's] attorney knew of and considered the controlling

law, and despite being aware of the need for the government to prove a clear and deliberate intent to take human life to find his client guilty of first-degree murder, accepted the flawed instruction that included the additional language of inflicting serious bodily injury." *Id.* at 293.

In reaching its holding, the appeals court relied upon the reasoning of *United States v. Perez*, 116 F.3d 840 (9th Cir. 1997). *Id.* at 291-93. In *Perez*, the defendants appealed their convictions on the premise that the trial court did not instruct the jury on an essential element of the charged offense. *Id.* The Ninth Circuit Court of Appeals found that even though both defendants submitted flawed jury instructions, neither they, the prosecution, nor the court was aware of the correct law. *Id.* at 842. The *Perez* court came to this conclusion after examining the evidence on the record and finding that the appellants had not "... considered the controlling law, or omitted element, and, in spite of being aware of the applicable law, proposed or accepted a flawed instruction." *Id.* at 845.

█ Similarly, in this case there were five instances during the trial proceeding when the trial court discussed the jury instructions with the parties. [Appellee App. at 2-260-303, 307-25, 339-42, 398-99, 413-415, 432]. Two of those opportunities involved long drawn out discussions between the parties on 'reasonable doubt', 'burden of proof', the essential element of 'force', and the defense of 'consent'. [*Id.* at 2-263-92, 310-316]. Within these discussions, the trial judge not only went over the intent standards for both rape and unlawful sexual contact,[7] but she even removed the stock specific intent instruction as to unlawful sexual contact, after realizing that courts have held such an instruction to be misleading.[8] [*Id.* at 2-271-2, 321]. At no time did appellant's counsel

---

[7] THE COURT: "Intentional touching takes it out of the general. So I don't find, number one, that unlawful sexual contact in the first degree is a general intent crime. It's specific intent in as much as the instruction I've prepared with respect to that, having to do with that. I do have the rape in the first degree is general intent, I'll give the instruction with respect to that." [*Id.* at 2-272].

[8] THE COURT: "... I am going to give the general intent instruction with respect to rape in the first degree. But I would be giving an instruction for specific intent with respect to unlawful sexual contact in the first degree because it is a specific intent crime. However, in looking at 17.03 in Devitt, it says no jury instruction is provided or should be given for the term specific intent because the law has grown and developed away from charging the jury on that concept. United States Supreme Court has noted that jury instructions concerning specific intent have been criticized as too general and potentially misleading ... Each of the jury instruction committees of the circuit court of appeals have

state any objection to the contested instruction. As in *Rosa* and *Perez*, however, there is not enough evidence to suggest that Joyce, or his counsel, were aware of a more appropriate instruction as to the mens rea element of rape, but affirmatively chose to stay silent. While Joyce's counsel was clearly aware of particular issues surrounding some portions of the jury instructions, there is no evidence on the record to support the argument that his failure to challenge the instruction as to the intent standard for rape was anything more than an oversight. Therefore, the failure of the appellant to object to the intent instruction on rape did not waive his right to raise this issue on appeal.

## B. The General Intent Instruction for Rape Given at Trial Did Not Constitute Plain Error

In addition to the requirement that there is an error that was not waived, the second prong of the *Olano* test requires the error to be plain, or obvious. *Olano*, 507 U.S. at 732.

■ The Third Circuit has held that omission of an essential element of an offense from the jury instructions ordinarily constitutes an obvious error satisfying the second prong of the *Olano* test. *United States v. Stansfield*, 101 F.3d 909, 921 (3d Cir. 1993); *accord Government of the V.I. v. Brown*, 685 F.2d 834, 839 (3d Cir. 1982). The general rule that such an omission usually constitutes plain error, is consistent with the Supreme Court's instruction that due process requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Thus, the prosecution must prove every element of the crime charged beyond a reasonable doubt, and to diminish this burden by omitting or materially misdescribing an essential element of an offense in the jury instructions violates the defendant's due process rights. *Smith v. Horn*, 120 F.3d 400 (3d Cir. 1997). In determining whether a jury instruction omitted or materially mis-described an essential element of the offense, the individual instruction must not be viewed as discrete, but must be considered within the context of the overall charge. *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973). Therefore, incorrect jury instructions

---

followed suit and discourage the use of jury instructions on specific intent. So, even though I have been doing it before, I am not going to do it any more." [*Id.* at 321-2].

may be cured with a curative instruction. *Id.*; *see United States v. Garrett*, 574 F.2d 778 (3d Cir. 1978).

The appellant contends that the problematic jury instruction is invalid as per holdings of the Third Circuit and the Supreme Court. In the case of *Garrett*, the Third Circuit held that instructions indicating that the law presumes a person to intend the natural and probable consequences of his knowing acts would be deemed erroneous, as this language can be interpreted as shifting the burden to the accused to produce proof of innocence. 574 F.2d at 783. In *Sandstrom v. Montana*, the Supreme Court held that such an instruction may be unconstitutional because it can be perceived by the jury as a conclusive presumption, such that a reasonable jury would have no choice but to find intent once convinced of the facts triggering the presumption.[9] 442 U.S. 510, 517, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979).

The appellant similarly argues that the challenged instruction in this case allows the jury to conclude that Joyce's voluntary commission of the act of intercourse requires them to find conclusively that Joyce intended to rape the victim, or that Joyce had the burden to prove that he did not intend to rape the victim. [Appellant Brief ("Appellant Br.") at 14.] In response, the Government states that because forcible rape is a general intent crime, the prosecution was only required to prove the commission of the criminal act—the act of non-consensual intercourse.[10] [Appellee Br. at 15]. Therefore, the Government concludes that as Joyce admitted to having sexual intercourse with the complainant and she testified she was forced to have sexual intercourse, the essential elements were proven and the instruction was not improper, *[Id.]*. The Government also argues that the cases cited in the appellant's brief, holding that conclusively presumptive or burden shifting jury instructions are prohibited, all involve specific intent crimes. Therefore, their holdings

---

[9] The Supreme Court explains that conclusive presumptions would eliminate intent as an element of the offense, invade the fact finder's province and "conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime." *Sandstrom*, 442 U.S. at 510 (citing *Morissette v. United States*, 342 U.S. 246, 275, 72 S. Ct. 240, 96 L. Ed. 288 (1952)).

[10] Unlike specific intent, general intent does not require the accused to intend the precise harm, which result from his acts, but rather to show that the defendant acted purposefully rather than by accident. JOSEPH R. NOLAN ET AL., BLACK'S LAW DICTIONARY (6th ed. 1990).

only apply to other cases involving specific intent crimes and not to the general intent crime of first-degree rape by force. [*Id.* at 1819].[11]

Section 1701(2) of Volume Fourteen of Virgin Island Code, or first-degree rape by force, is a general intent crime. On its face, this statute does not specifically mention any mens rea requirement. However, the Virgin Islands courts have followed the Third Circuit Court of Appeals which held that where a statute, codifying a common law crime, is silent as to intent, it should be read in conjunction with the general provision of 14 V.I.C. § 14(5), a "legislative expression which adds affirmative support to the rule against reading a statute as abandoning a requirement of knowledge ..."[12] *Francis v. Government of the V.I.*, 236 F. Supp. 2d 498, 500 (D.V.I. 2002) (citing *Government of the V.I. v. Rodriguez*, 423 F.2d 9, 14 (3d Cir. 1970)). However, if the Legislature makes a deliberate choice not to include intent it is inappropriate for the court to engraft such a requirement. *See id.* at 502 (court found that Legislature intentionally omitted any intent requirement from 14 V.I.C. § 1700(a) therefore the statute contained no requirement of knowledge); see also *Government of the V.I. v. Richards*, 44 V.I. 47 (Terr. Ct. 2001) (court found that the Legislature intentionally omitted any intent requirement from 14 V.I.C. §§ 1702, 1709, therefore it was inappropriate for the Court to require such an element).

■ Our Legislature has not expressly indicated that forcible rape has no mens rea requirement, therefore the mistake of fact provision should be read along with the forcible rape statute, engrafting a general intent requirement into the provision. *See* Act Oct. 18, 1994, No. 5013, § 12 Sess. L. 1984. Leading further credence to this interpretation, an examination of the history of forcible rape reveals it to be a general

---

[11]  All the cases invalidating jury instructions deal with 'specific' intent crimes that require more than a generalized knowledge of wrongdoing. *Garrett*, 574 F. 2d 778 (mail fraud); *Government of the V.I. v. Parrilla*, 7 F.3d 1097, 29 V.I. 353 (3d Cir. 1993) (assault with intent to commit mayhem); *United States v. Apfelbaum*, 621 F.2d 62 (3d Cir. 1980) (knowingly making false material declaration before a grand jury); *Sandstrom*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (deliberate homicide).

[12]  14 V.I.C. 14(5) reads as follows: "All persons are capable of committing crimes or offenses except ... (5) persons who committed the act or made the omission charged under an ignorance or mistake of fact which disproves any criminal intent." The Third Circuit Court of Appeals explains that while this provision deals with capacity to commit crimes, it places on the prosecution, the burden of proving the element of knowledge beyond a reasonable doubt. *Rodriguez*, 423 F.2d at 9.

intent common law crime. Nicole Fusilli, *New York State of Mind: Rape and Mens Rea*, 76 ST. JOHN'S L. REV. 603, 609 (2002) (citing JOSHUA DRESSLER, UNDERSTANDING CRIMINAL LAW, § 33.01, at 507 (3d ed. 2001)). In addition, the language of the Virgin Islands rape statute is patterned on parts of New York Penal Law §§ 130.20-130.35, *see* 14 V.I.C. § 1701 (revision notes-1957), under which forcible rape is defined as a general intent crime.[13] *People v. Williams*, 81 N.Y.2d 303, 316-17, 614 N.E.2d 730, 598 N.Y.S.2d 167 (1993). Finally, this view is consistent with the law in a vast majority of jurisdictions, which hold that rape by force is a general intent crime. *See* Kit Kinports, *Rape and Force: The Forgotten Mens Rea*, 4 BUFF. CRIM. L. REV. 755 (2001).

■ The jury instruction under contention did not constitute an obvious error as it did not omit or materially misdescribe the mens rea element. The instruction given by the trial court is the traditional standard charge for 'general intent'. DEVITT & BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS, 1 § 17.07 (4th ed. 1992). The appellant is correct in pointing out that courts and commentators are moving away from the distinction between 'specific intent' and 'general intent' crimes, as well as the stock instruction for specific intent, as such a distinction and instruction have a tendency to confuse a jury. *Id*; *see also United States v. Bailey*, 444 U.S. 394, 398-414, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980); *see also United States v. Brooksby*, 668 F.2d 1102 (9th Cir. 1982); *see also United States v. Arambasich*, 597 F.2d 609 (7th Cir. 1979). However, the appellant goes one step further and argues that the Supreme Court and Third Circuit have classified stock general intent instructions to be impermissible. While *Garrett, Sandstrom* and their progeny do not overtly limit their holdings regarding jury charges to specific intent crimes, the Government is correct that all the cases cited by the appellant involve impermissible mens rea jury instructions for

---

[13] New York Penal Law 130.35 provides, in pertinent part, that a defendant is guilty of rape in the first degree when "he or she engages in sexual intercourse with another person by forcible compulsion." The prosecution must also establish the victim's lack of consent pursuant to § 130.05, but the lack of consent results from forcible compulsion. *People v. Williams*, 81 N.Y.2d 303, 316, 614 N.E.2d 730, 598 N.Y.S.2d 167 (1993). *Williams*, the definitive New York case on forcible rape and intent, explains that though the statutes are silent on the subject of intent, it is an implicit element and the intent required is the intent to forcibly compel another to engage in intercourse. 81 N.Y.2d at 316-17. Thus, forcible rape in New York is a general intent crime.

specific intent crimes. In addition, looking at the jury instructions as a whole further refutes the appellant's argument that the instruction as to mens rea was conclusively presumptive. For example, the trial court charged the jury as to consent, an absolute defense invoked by the defendant. [Appellee App. at 1-193-94]. The trial court also instructed the jury that the law presumes the defendant to be innocent; the presumption of innocence is sufficient to acquit unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt; the burden is always on the prosecutor to prove guilt beyond a reasonable doubt; and the burden never shifts to the defendant. [*Id.* at 196-9]. Therefore, while the instruction given by the lower court may be somewhat unclear in that it invokes the somewhat confusing concept of general intent, the instruction itself does not rise to the level of an obvious error.

## C. There is No Prejudice to the Outcome or Reputation of the Judiciary Proceeding

Because there was no plain error and the jury instruction on intent was adequate, it is unnecessary for us to consider the third and fourth prongs of the *Olano* test and examine whether the plain error was prejudicial to the outcome of the proceedings, or affected the fairness, integrity, or public reputation of judicial proceedings. 507 U.S. at 734, 736.

We therefore affirm the lower court's ruling and the appellant's conviction.