

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-24-2005

# Govt of VI v. Rosa

Precedential or Non-Precedential: Precedential

Docket No. 04-1846

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Govt of VI v. Rosa" (2005). *2005 Decisions*. Paper 1494.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1494

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-1846

———

GOVERNMENT OF THE VIRGIN ISLANDS,

Appellant

v.

JOSE ALBERTO ROSA

———

On Appeal from the Appellate Division of the
District Court of the Virgin Islands
(D.C. Crim. App. No. 2001/0068)
Honorable Raymond L. Finch, Chief Judge
Honorable Thomas K. Moore, District Judge
Honorable Rhys S. Hodge, Territorial Judge
(sitting by designation)

———

Argued: December 14, 2004

Before: SLOVITER, FUENTES, and
GREENBERG, Circuit Judges.

(Filed: February 24, 2005)

———

Iver A. Stridiron
Attorney General
Elliott M. Davis
Solicitor General
Maureen Phelan (argued)
Assistant Attorney General
Department of Justice
34-38 Kronprindsens Gade
GERS Bldg., 2nd Floor
Charlotte Amalie, St. Thomas,

United States Virgin Islands 00802

Attorneys for Appellant

G. Luz A. James (argued)
P.O. Box 224469
Christiansted, St. Croix
United States Virgin Islands 00822

Attorney for Appellee

_____

OPINION OF THE COURT

_____

GREENBERG, Circuit Judge.

## I.  FACTUAL AND PROCEDURAL HISTORY

This matter comes on before this court on an appeal by the Government of the Virgin Islands from an order of the District Court of the Virgin Islands entered March 11, 2004, reversing Jose Alberto Rosa's conviction for first-degree murder at a jury trial in the territorial court.  Rosa and Victor Ramos were tried jointly in the territorial court after being charged in a criminal information with committing murder in the first degree and with carrying or using a dangerous weapon during a crime of violence.  14 V.I. Code Ann. §§ 922(a)(1) & 2251(a)(2) (1996 & Supp 2004).

The following is a summary of the evidence supporting the charges at the defendants' joint trial largely drawn from the testimony of two seemingly disinterested eye witnesses.[1]  Rosa's car and a truck belonging to George Glasgow, the victim, were parked on a street in Estate Profit, St. Croix, and Rosa and Glasgow were in a field beside the vehicles.  In addition, Ramos, who had been in Rosa's car, was at

_____

[1]The facts in this case in support of Rosa's conviction are set forth in the district court opinion and the government's brief.  In his brief Rosa does not take issue with those recitations.  Indeed, Rosa's brief does not make any reference to the facts of his offense.  It should be noted, however, that both defendants testified at trial and gave exculpatory versions of the events, arguing that they took their actions in self defense.  App. at 9.

the scene. Rosa had a 2 x 2 stick in his hands, taped at the end to form a grip, with which he was hitting Glasgow. Upon being struck, Glasgow ran to his car, pulled out a machete, and swung errantly at Rosa. Ramos quickly jarred the machete out of Glasgow's hand and forced him to the ground. Ramos then picked up the machete and struck Glasgow with its blunt edge, while Rosa hit him with the stick. Even after Ramos ceased hitting Glasgow, Rosa continued to strike him with the stick. According to the eyewitnesses, the beating continued as Rosa hit Glasgow with the club while Ramos kicked him. Glasgow was unable to regain his footing as Rosa continued beating him. The witnesses testified that after Glasgow stopped moving, Rosa hit him several times in the head with the modified 2 x 2. Once Glasgow was unconscious, Rosa and Ramos pilfered through his pockets, found his wallet, and took his money. Glasgow died at the scene. Rosa and Ramos were apprehended and charged with first-degree murder and carrying a dangerous weapon during a crime of violence.

There were discussions regarding the jury instructions beginning midway through the trial. The court first sifted through jury instructions Ramos proposed.[2] These instructions erroneously indicated that to prove first-degree murder the government had to prove that the defendants "had an intent to kill or inflict serious bodily harm against a human being."[3] Appellant's br. at 16. This proposed instruction was erroneous to the extent that it allowed the jury to convict the defendants of first-degree murder even if their intent only was to inflict serious bodily harm. Nevertheless when the court asked Rosa's attorney, Mr. James, if he had any objections to these instructions the following ensued:

> THE COURT: Attorney James, you
> have looked at Defendant Ramos [sic]
> proposed instructions?

_____

[2]There is no indication in the record that Rosa submitted jury instructions and he does not indicate in his brief that he did so.

[3]This statement clearly was an inaccurate characterization of the homicide law of the Virgin Islands under which for a first-degree murder conviction the government must prove that the unlawful killing was accompanied by a clear and deliberate intent to take life. See Government of the Virgin Islands v. Lake, 362 F.2d 770, 775-76 (3d Cir. 1966).

MR. JAMES: Yes, your Honor, I have.

THE COURT: Do you have any objections to –

MR. JAMES: I have no objections, your Honor.

THE COURT: Any additions, modifications or corrections?

MR. JAMES: No, sir.

THE COURT: So they can apply equally to your client.

MR. JAMES: That's correct, sir.

App. at 65-66.

The court then walked through Ramos's proposed jury instructions, one by one, allowing the parties to raise any objections or offer any additions. See app. at 66-73. Rosa did not raise objections to the language Ramos proposed erroneously setting forth the government's burden to prove intent, and ultimately stated, "I am satisfied, your Honor." App. at 73.

The court then analyzed the government's proposed instructions:

THE COURT: The Government has proposed in its initial instructions, element instructions — murder in the first degree, possession and a flight instruction. Is there any objection to any of those three instructions?

MR. JAMES: No, your honor.

THE COURT: Excuse me?

MR. JAMES: No. I said no, your Honor.

4

THE COURT: None.

App. at 73. The court then broadly outlined the instructions it would give, see app. at 74-78, and repeated its call for any objections or modifications to the proposed instructions. App. at 78. Mr. James again replied, "I am satisfied, your Honor." Id.

After the parties made closing arguments and the issue of self-defense was raised, the court suggested that it should instruct the jury on the lesser included offense of involuntary manslaughter. Both defendants agreed to this charge which was to be in addition to a charge on voluntary manslaughter that the court already had determined to give. The court, however, did not instruct the jury until the following morning, a delay that provided the attorneys with an additional opportunity to raise objections or suggest modifications to the jury instructions. The court noted that, "[i]f the parties require to submit any additional instructions they may do so particularly in light of involuntary manslaughter. . . ." App. at 161. The next morning when the court convened no party made any objection to the instructions.

Ultimately when the court instructed the jury on first-degree murder, it incorporated Ramos's erroneous instruction into the charge:

> Now defendant is . . . defendants are charged in the first count of the amended information with the charge of murder in the first degree, in violation of Title 14, section 922(a)(1). Murder is the unlawful killing of a human being with malice aforethought. <u>For murder to constitute murder in the first degree the additional elements of willfulness deliberateness and premeditation must be established; therefore, murder in the first degree is the unlawful killing of a human being with malice aforethought, with willfulness, deliberateness and premeditation</u>.
>
> Therefore, before you can find the defendants or any of the defendants guilty of the crime of murder in the first

degree you must find that the government has proved each of the following essential elements beyond a reasonable doubt: that the defendants knowingly and intentionally while aiding and abetting each other unlawfully killed a human being, in this case George Glasgow. That the defendants acted with malice aforethought. That the killing was willful, deliberate and premeditated. That the defendant did not act in self-defense and that the defendant had an intent to kill or to inflict serious bodily harm against a human being and that the acts occurred on November 5, 2000, on St. Croix, Virgin Islands.

Certain terms have been used and I will define a few of them for you now. Malice aforethought: Malice aforethought means an intent at the time of killing willfully to take the life of a human being or an intent willfully to act in callous and wanton disregard of consequences of human life. But malice aforethought does not necessarily imply any ill will, spite or hatred toward the individual killed.

Malice as the term is used here is but another name for a certain state or condition of a person's mind or heart. Since no one can look into the heart or mind of another the only means of determining whether or not malice existed at the time of the killing is by inferences drawn from the surrounding facts and circumstances as shown by the evidence in the case. Where a killing is shown to have been accomplished by a deadly weapon or other instrument in such a manner as may be naturally

6

expected and probable to cause death, malice may be inferred from that fact alone.

Premeditation and deliberation are very similar and they mean virtually the same thing. <u>Premeditation and deliberation are typically associated with murder in cold blood and requires a period of time in which the accused coolly deliberates or thinks the matter over before acting</u>.

The necessary duration of that period cannot be arbitrarily fixed. The time required to form a deliberate plan or design varies in the minds and temperament in which they may be made. <u>Any interval of time between the forming of the specific intent to kill and that execution of that intent which is of sufficient duration for the accused to be fully conscious and mindful of what he intended willfully to set about to do is sufficient to justify a finding of premeditation</u>.

App. at 186-89 (emphasis added).

The court then instructed the jury on the lesser included charges of second-degree murder, voluntary manslaughter, and involuntary manslaughter. <u>See</u> app. 190-96. To distinguish between the crimes of first- and second-degree murder the court explained:

Murder in the first degree is the unlawful killing of a human being with malice aforethought and willful, deliberate and premeditated. Murder in the second degree does not have deliberation and premeditation, but murder in the first degree and murder in the second degree have malice aforethought.

7

App. at 191.  Following the jury instructions, the court once again invited the attorneys to propose any modifications, additions, or corrections to these instructions.  Once again, Rosa's attorney replied, "I am satisfied, your Honor."  App. at 211.

The jury found Rosa guilty of first-degree murder and Ramos guilty of voluntary manslaughter on August 1, 2002, and, in addition, found them guilty on the weapons offenses.[4]  The court sentenced Rosa on September 19, 2001, to life imprisonment without the opportunity for parole.  Rosa appealed to the Appellate Division of the District Court of the Virgin Islands, which, in a per curiam opinion, reversed his conviction on the grounds that, "the erroneous jury instruction describing the element of intent-to-kill violated Appellant's due process right to a fair trial and constituted plain error."  App. at 29.  Ramos, however, did not appeal from his conviction and sentence.      Following the reversal in the district court the government filed its timely notice of appeal to this court from the district court.  The three-level proceedings in this case have placed us in the unusual position of adjudicating an appeal by the government in a criminal case in which the jury convicted the defendant and the issue on appeal relates to the conviction.

## II.  JURISDICTION AND STANDARD OF REVIEW

The Appellate Division of the District Court of the Virgin Islands had jurisdiction in this case under 48 U.S.C. § 1613a(a) and we have jurisdiction over the appeal from the Appellate Division of the District Court of the Virgin Islands under 48 U.S.C. § 1613a(c).  A determination of whether a defendant effectively waived his rights is made as a matter of law and is subject to plenary de novo review on appeal.  United States v. Goldberg, 67 F.3d 1092, 1097 (3d Cir. 1995) ("Determining the requirements that must be satisfied in order to find an effective waiver of a constitutional right is a question of law.").

## III.  DISCUSSION

A.      Forfeiture vs. Waiver

---

[4]We are not concerned with the weapons offenses on this appeal.

The first issue that we must address is whether Rosa, by failing to object to the erroneous first-degree murder instruction at trial, waived, or merely forfeited, his right to appeal his conviction based upon the inaccurate instruction. The distinction between waiver and forfeiture is critical in the context of Federal Rule of Criminal Procedure 52(b), the crux of this appeal.[5] Rule 52(b), the authority which the district court invoked to overturn Rosa's conviction as he did not object to the jury instructions at trial, provides an appellate court with the limited power to correct an error even though the appellant did not advance an objection to the error in the trial court. United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 1776 (1993).

Authority under the auspices of Rule 52(b) is contingent upon there having been an "error" in the proceedings in the trial court. Id. at 732, 113 S.Ct. at 1776. Olano defines an "error" as the deviation from a legal rule in circumstances in which the legal rule has not been waived. Id. at 732-33, 113 S.Ct. at 1777. Accordingly, when a legal rule has been waived, an appeal based upon the nonadherence to that legal principle is precluded.[6] If, however, the correct application of

---

[5]Fed. R. Crim. P. 52 states:

> Rule 52. Harmless and Plain Error
>
> (a) Harmless Error. Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.
>
> (b) Plain Error. A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.

[6]For a waiver to be valid, the right said to have been waived must be waivable. The Court in Olano noted that, "[w]hether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." Olano, 507 U.S. at 733, 113 S.Ct. at 1777 (citation omitted). It long has been held that a defendant's attorney may waive objections that might have been made to jury instructions. See

the rule merely was "forfeited," Rule 52(b) provides a basis for review. Thus, "forfeiture, as opposed to waiver, does not extinguish an 'error' under Rule 52(b)." Id. at 733, 113 S.Ct. 1777. Therefore, "if a legal rule was violated during the district court proceedings, and if the defendant did not waive the rule, then there has been an 'error' within the meaning of Rule 52(b) despite the absence of a timely objection." Id. at 733-34, 113 S.Ct. at 1777. Stated most simply, "where there was forfeiture, we apply a plain error analysis; where there was waiver, we do not." United States v. Mitchell, 85 F.3d 800, 807 (1st Cir. 1996).

Though the conceptual distinction between a forfeiture and a waiver is clear, in practice the distinction is sometimes elusive. The Court in Olano, clarifying the distinction, noted that while "forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" 507 U.S. at 733, 113 S.Ct. at 1777 (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023 (1938)).

The threshold question in deciding whether there is appellate authority to grant relief under Rule 52(b), is therefore whether the appellant who failed to object in the trial court to an error that violated his rights was aware of the relinquished or abandoned right. See United States v. Perez, 116 F.3d 840, 845 (9th Cir. 1997) (en banc). If he had that knowledge, yet intentionally chose to abandon the right, his failure to object will be deemed a "waiver" depriving him of the opportunity to obtain relief on appeal. Accordingly, an explicit agreement or stipulation constitutes a waiver of rights if the defendant was aware of the right. See United States v. Malpeso, 126 F.3d 92, 95 (2d Cir. 1997). Additionally, a number of courts of appeals have held that the failure of the defendant to raise a timely objection can be deemed a waiver in circumstances where the defendant "consciously refrains from objecting as a tactical matter." United States v. Yu-Leung, 51 F.3d 1116, 1122 (2d Cir. 1995); see United States v. Salerno, 108 F.3d 730, 740 (7th Cir. 1997) (defendant's objection to evidence indicating knowledge of potential need for limiting instruction, combined with overt acceptance of court's final jury instruction without a limiting instruction, demonstrated that defendant "intentionally relinquished his known right").

United States v. Perez, 116 F.3d 840, 845 n.7 (9th Cir. 1997) (en banc).

10

The case before us, however, does not present us with a knowing waiver situation. We do not see any indication that Rosa's attorney explicitly stipulated to the erroneous instructions with knowledge of the error in them or refrained from objecting to the jury instructions for tactical reasons.[7] Rather, we are satisfied that his failure to object, and moreover his agreement on at least three occasions to the erroneous jury instructions, stemmed from the circumstance that he was unaware of the correct rule of law or, if aware of it, did not realize that the intent instruction misstated it.

The reasoning of the Court of Appeals for the Ninth Circuit in Perez, 116 F.3d at 840, bolsters Rosa's claim that he did not waive his right to appellate review by his mere acquiescence to the erroneous jury instructions. In Perez, the appellants contended that the court should reverse their convictions because the district court did not instruct the jury on an essential element of the offense charged, using or carrying a firearm during and in relation to drug trafficking, even though the appellants had submitted the flawed instruction to the court. Id. at 844-45. The court of appeals previously had held that the statute's "in relation to" requirement was an essential element of the offense and therefore its submission to the jury was required. See United States v. Mendoza, 11 F.3d 126, 128 (9th Cir. 1993). Though the court had decided Mendoza prior to the trial in Perez, neither the trial court nor the parties in Perez suggested that the "in relation to" element should be submitted to the jury. The appellants did not object to the faulty instruction and were convicted. On appeal, the appellants sought reversal by reason of the faulty instruction. The government argued that the error was unreviewable because the appellants had offered the instruction which did not include the element, and thus had waived their right to appellate review. Id. at 844.

The court in Perez compared the facts before it with those in a previous case, United States v. Baldwin, 987 F.2d 1432, 1436-37 (9th Cir. 1993), in which it had held that a defendant had waived his right to appellate review. In Baldwin a defendant was charged with conspiracy to distribute cocaine. The court's proposed jury instruction, however, omitted the required "overt act" element of the conspiracy charge. The government objected to the instruction because of the omission of this element, but the defense attorney

---

[7]We note that the government does not urge that we reinstate the conviction on the basis of the invited error doctrine. See United States v. Pungitore, 910 F.2d 1084, 1126 (3d Cir. 1990).

11

indicated that he did not believe it necessary to instruct about the "overt act" requirement. Id. at 1437. The government then withdrew its opposition, and the court approved the instruction without the "overt act" requirement. The defendant was convicted and ultimately appealed based upon the faulty instruction. The Court of Appeals for the Ninth Circuit held that the defendant waived his right to raise the erroneous jury instruction on appeal and thus was precluded from arguing plain error.

The Perez court, recognizing Baldwin as a prototypical waiver case, stated, "[t]his scenario is an example of waiver because the record reflects that the defendant was aware of the omitted element and yet relinquished his right to have it submitted to the jury." Perez, 116 F.3d at 845. The court continued, "[w]aiver occurred . . . because the defendant considered the controlling law, or omitted element, and, in spite of being aware of the applicable law, proposed or accepted a flawed instruction."[8] Id.

The court in Perez distinguished the case before it from a "clear" waiver like that in Baldwin by noting that the appellants in Perez had been unaware of the requirement to include the "in relation to" element to the jury.[9] Perez, 116 F.3d at 845. The court noted:

> [T]here is no evidence that [the appellants] considered submitting the 'in relation to' element to the jury, but then, for some tactical or other reason, rejected the idea. Thus, it cannot be said that [the appellants] waived their right to have this element submitted to the jury; waiver occurs only when a defendant relinquishes or abandons a 'known right.' Olano, 507 U.S. at 733, 113 S.Ct. at 1777. To the contrary, the

[8]See also United States v. Guthrie, 931 F.2d 564, 567 (9th Cir. 1991) (refusing to review jury instructions on appeal because trial court had offered to give omitted instruction, and defendant's attorney objected).

[9]"Unaware" in this sense obviously does not mean that it was impossible for the parties to know of the information, as the court of appeals decided Mendoza months before the trial in Perez.

12

> failure to propose the 'in relation to' element was forfeited error: error that is not objected to during trial because the defendant is unaware of a right that is being violated. Here, because neither [of the appellants] knew of the right to have the omitted element submitted to the jury, we must treat the right as forfeited, as opposed to waived.

Id. at 845-46.

Guided by the logical underpinnings of Perez, we hold that Rosa did not waive, but merely forfeited his rights to proper jury instruction. Despite his repeated acquiescence to the instructions, it is clear that he did not knowingly and intentionally waive his right to the proper charge. There is no indication that his attorney knew of and considered the controlling law, and despite being aware of the need for the government to prove a clear and deliberate intent to take human life to find his client guilty of first-degree murder, accepted the flawed instruction that included the additional language of inflicting serious bodily injury. We, therefore, will not hold that his attorney's failure to object to the erroneous first-degree murder instruction waived Rosa's right to have the jury correctly instructed on the elements of the crime for which he was charged.

### B.   Plain Error

Because we conclude that Rosa forfeited, as opposed to waived, his right to object to the jury instructions on appeal, we analyze the instructions for "plain error." See United States v. Retos, 25 F.3d 1220, 1228 (3d Cir. 1994). To demonstrate "plain error" an appellant bears the burden of proving that: (1) the court erred; (2) the error was "plain" at the time of appellate consideration; and (3) the error affected substantial rights, usually meaning that the error "must have affected the outcome of the district court proceedings." Olano, 507 U.S. at 734, 113 S.Ct. at 1777-78. Federal Rule of Criminal Procedure 52(b) leaves the decision to correct the forfeited error within the discretion of the court of appeals. As we recently indicated, "[w]e should exercise our discretion to correct the error, where the defendant is actually innocent, or where, regardless of the defendant's innocence or guilt, the error seriously affects the fairness, integrity or public reputation of judicial proceedings." United States

13

v. Gordon, 290 F.3d 539, 543 (3d Cir. 2002) (internal quotation marks omitted).

The presence of the first element, "error," partially addressed above, is ascertained by inquiring whether there was a deviation from a legal rule that was not waived. Olano, 507 U.S. at 732-33, 113 S.Ct. at 1777. Long before the trial in this case we held in Government of the Virgin Islands v. Lake, 362 F.2d 770, 775-76 (3d Cir. 1966), that under Virgin Islands law, a conviction for first-degree murder cannot lie unless the government proves the unlawful killing was accompanied by a clear and deliberate intent to take life. The government concedes that "since first-degree murder requires the homicide to be committed with the specific intent-to-kill, the single reference to the intent to commit 'serious bodily injury' in relation to first-degree murder was probably erroneous." Appellant's br. at 22.

The second limitation on appellate authority under Rule 52(b) is that the error be "plain." Olano, 507 U.S. at 734, 113 S.Ct. at 1777. To be "plain" an error must be "clear" or "obvious." Id. (citing United States v. Young, 470 U.S. 1, 16 n.14, 105 S.Ct. 1038, 1047 n.14 (1985); United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592 (1982)). The government concedes this element as well. Appellant's br. at 22 ("Case law appears consistent on this point, so the error was probably 'plain.'").

The third limitation on appellate authority under Rule 52(b) is that the plain error must "affec[t] substantial rights." Olano, 507 U.S. at 734, 113 S.Ct. 1777. This language tracks Rule 52(b) and means "that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." Id. (citing Bank of Nova Scotia v. United States, 487 U.S. 250, 255-57, 108 S.Ct. 2369, 2373-74 (1988); United States v. Lane, 474 U.S. 438, 454-64, 106 S.Ct. 725, 734-39 (1986) (Brennan, J., concurring in part and dissenting in part); Kotteakos v. United States, 328 U.S. 750, 758-65, 66 S.Ct. 1239, 1244-48 (1946)); United States v. Barbosa, 271 F.3d 438, 454 (3d Cir. 2001).

In the present case, the district court held that the error was prejudicial.[10] In reaching this conclusion the court held that the jury

---

[10]The government appears to have conceded that "substantial rights" were affected. Appellant's br. at 22 ("The Government has also conceded that a defendant has a 'substantial right' to have the jury

14

could have found that Rosa acted with malice based on the intent to act willfully in a callous and wanton disregard of consequences of human life, acted with premeditation, and acted with an intent to inflict serious bodily injury.[11]  See app. at 19.  If the jury utilized this

correctly instructed on the elements of the crime, although not an absolute right.").  The government, however, later in its brief limits its concession for it argues that "there is no reasonable likelihood that this jury believed that the defendant acted with intent to inflict only serious bodily injury, yet found him guilty of first-degree murder."  Id. at 24.  In any event, given that the issue of whether the mistake was prejudicial was argued and briefed we will consider the "affects substantial rights" prong of a plain error analysis in making our determination.

[11]The district court, in finding the erroneous jury instruction prejudicial, stated, "we find it difficult to believe that the error could not have impacted the jury's consideration of the case."  App. at 22.  The district court noted:

> The instruction provided two options for assessing the element of intent.  If the jury found the government had proven beyond a reasonable doubt that Rosa intended to inflict serious bodily injury, the government had satisfied its burden with respect to that element.  Alternatively, the element could be proven if the government proved intent to kill.  Jurors heard eyewitness testimony that Rosa hit the victim so many times with a 2 x 2 stick, which was fitted with a grip, that Glasgow had a massive skull injury.  The testimony indicated that a significant portion of these blows were directed at Glasgow after he had fallen to the ground and appeared unconscious.  If the jury were in any way uncertain about whether intent to kill had been proven, faced with the breadth of evidence showing the harm done to Glasgow, it would have been not only easy but logical to determine that the Government had met its burden by proving intent to cause

15

logic it would have found him guilty of first-degree murder with a lower burden of proof than the law requires, and thus run afoul of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  See Smith v. Horn, 120 F.3d 400, 415 (3d Cir. 1997).[12]

We reject the district court's assessment of the likely prejudicial impact of the faulty instructions.  As we recently have noted, "[i]t is a rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court."  United States v. Gambone, 314 F.3d 163, 182 (3d Cir. 2003); Gordon, 290 F.3d at 545 (quoting Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730 (1977)).  The standard in analyzing the effect of the erroneous instructions is whether there was a "reasonable likelihood" that the jury prejudiced the defendant by applying the challenged instructions in a manner that violated the constitution.  See Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 482 (1991).

We do not find that there was a reasonable likelihood that the erroneous jury instructions prejudiced Rosa.  Indeed, we think it quite clear that the jury, despite the faulty first-degree murder instruction, concluded that Rosa had the specific intent to kill Glasgow.  Therefore, there was no "reasonable likelihood" that the jury applied the challenged instructions in a manner that allowed it to convict Rosa of the crime of first-degree murder without making the findings that the law requires.

The most compelling reason to sustain the conviction is

_____

serious bodily injury.

App. at 22-23.

[12]The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073 (1970);  see also Smith v. Horn, 120 F.3d at 415 ("A jury instruction that omits or materially misdescribes an essential element of an offense as defined by state law relieves the state of its obligation to prove facts constituting every element of the offense beyond a reasonable doubt, thereby violating the defendant's federal due process rights.")

16

derived from the manner in which the jury disposed of the homicide charges against Ramos as compared to those against Rosa. In the cases of both defendants the court instructed the jury on first-degree murder, second-degree murder, voluntary manslaughter, and involuntary manslaughter.[13] Accordingly, the jury could have acquitted or convicted either defendant of any of these crimes. Moreover, the court gave the jury certain identical instructions applicable for its consideration of each of these offenses, though, of course, it also gave instructions discrete as to each particular offense. The jury, however, though finding Rosa guilty of first-degree murder, found Ramos not guilty of murder, even in the second degree, and convicted him on the lesser offense of voluntary manslaughter.

The crimes of murder and manslaughter are distinguishable by the burden of demonstrating malice placed upon the government in proving murder. See Stevenson v. United States, 162 U.S. 313, 320, 16 S.Ct. 839, 842 (1896) ("The presence or absence of this malice or mental condition marks the boundary which separates the two crimes of murder and manslaughter."). The court instructed the jury that, "[m]alice aforethought means an intent at the time of a killing willfully to take the life of a human being or an intent willfully to act in callous and wanton disregard of consequences of human life."[14] App. at 188. We are convinced considering the evidence in the case and the court's charge to the jury that, in finding Ramos guilty of voluntary manslaughter but not murder, the jury concluded that he did not intend to kill Glasgow.[15] In fact, we do not understand how we

_____

[13]First-degree murder is distinguishable from second-degree murder in that to prove second-degree murder it is not necessary to prove deliberation and premeditation. To prove either first- or second-degree murder, however, malice aforethought is necessary. See Government of the Virgin Islands v. Sampson, 94 F. Supp. 2d 639, 644 (D.V.I. App. Div. 2000) (["14 V.I. Code Ann.] Section 922 retains the common law distinction between second degree murder, which requires a killing with malice aforethought, and first degree murder, which in addition to malice aforethought requires a killing with premeditation and deliberation.").

[14]Rosa does not claim that this charge was erroneous.

[15]The jury made a reasonable assessment and quite understandably distinguished between the defendants given the evidence presented at trial. The evidence indicates that Ramos did not stab Glasgow with the machete's blade, but rather struck him with its blunt

17

could reach a contrary conclusion as the court made it clear that if either defendant intended to kill Glasgow he was guilty of murder. Thus, the jury clearly drew a distinction between the actions of Ramos and those of Rosa because in returning a verdict of first-degree murder against Rosa it necessarily concluded that he possessed malice aforethought and acted with premeditation and deliberation.

The jury's differential treatment of the two defendants demonstrates its cognizance that the government had the burden to prove that a defendant had the intent to kill if it was to convict him of first-degree murder. Though we think it evident that in convicting Ramos of the lesser offense of voluntary manslaughter the jury concluded that he did not possess malice and accordingly did not possess an intent to kill Glasgow, we are satisfied that in finding Rosa guilty of murder, it concluded that he did act with malice aforethought. In other words, if the jury did not believe that the Rosa had possessed an intent to kill when causing the death of Glasgow, it would not have found him guilty of murder but rather would have treated him as it did Ramos, and accordingly found him guilty of voluntary manslaughter. We are convinced that the jury understood clearly the differing levels of intent necessary to prove voluntary manslaughter and first-degree murder, and found that Rosa possessed malice aforethought.

This conclusion, however, does not end our inquiry into whether the erroneous instruction was prejudicial. Rosa, mirroring the district court's opinion, argues that notwithstanding the jury's differential treatment between Rosa and Ramos, Rosa may have been convicted on a lesser proof standard than mandated under our jurisprudence. He argues it is reasonably likely that jury found malice not by concluding that Rosa had an intent to kill, but rather by concluding that he had an "intent willfully to act in callous and wanton disregard of consequences of human life." See appellee's br. at 9; app at 19. Inasmuch as premeditation is an element of first-degree murder, Rosa's argument hypothesizes that the jury decided that he acted with premeditation, but convicted him of first-degree murder by following the erroneous instruction regarding "inflict[ing]

edge. Additionally, as the government noted at oral argument, the impact of the 2 x 2 on Glasgow's skull caused his death. The jury could have regarded these factors as a basis to hold that Ramos did not exhibit an intent to kill Glasgow, as well as to distinguish Rosa's more violent actions.

18

serious injury." <u>Id.</u>

The possibility that the jury employed this rationale as its basis to convict Rosa for first-degree murder is not only not "reasonably likely," it is extremely remote if possible at all. In determining the constitutional validity of jury instructions, a court should not view an individual instruction discretely, but rather should consider the instructions in the context of the overall charge. <u>Cupp v. Naughten</u>, 414 U.S. 141, 146-47, 94 S.Ct. 396, 400 (1973). We, therefore, extend our inquiry to the instructions as a whole. Rosa does not contend that the court did not instruct the jury correctly on the requirements of finding "premeditation." <u>See</u> app. 188-89 ("Any interval of time between the forming of the <u>specific intent to kill</u> and that execution of that intent which is of sufficient duration for the accused to be truly conscious and mindful of what he intended willfully to set about to do is to justify a finding of premeditation.") (emphasis added).[16] Moreover, the court told the jury that premeditation is "typically associated with murder in cold blood . . . ." App. at 189. The court, therefore, clearly instructed the jury and correctly indicated that the only manner in which it could find premeditation was, in part, by concluding that Rosa had formed a specific intent to kill.[17]

In reaching our conclusion, "[w]e must assume that juries for the most part understand and faithfully follow instructions." <u>Connecticut v. Johnson</u>, 460 U.S. 73, 85 n.14, 103 S.Ct. 969, 977, n.14 (1983). Therefore, it is implicit in the jury's finding of premeditation that it found that Rosa had a specific intent to kill. Accordingly, it follows that the jury's finding of first-degree murder incorporated a conclusion that Rosa possessed a specific intent to kill Glasgow and did not merely intend to injure him seriously, as it would be far fetched to conclude that the jury believed that he had a specific intent to kill for purposes of premeditation but not for the purposes of

---

[16]In his brief Rosa indicates that "the premeditation instruction was also independently correct." Appellee's br. at 8.

[17]The district court in its opinion said that it found "further evidence that the error influenced the jury's deliberations in such a way as to prejudice Rosa by contrasting the jury's verdict in Ramos' case, in which they found him guilty of the lesser crime of voluntary manslaughter." App. at 22-23. The court, however, did not explain why it reached this conclusion.

malice aforethought. We conclude, therefore, that the jury, in fact, did reach the conclusion that Rosa possessed a specific intent to kill when he unlawfully killed Glasgow. We therefore cannot agree with the district court's holding that there was a reasonable likelihood that the jury convicted Rosa of first-degree murder under a lower burden of proof threshold than the law requires. Overall, therefore, taking into account all of the circumstances that we have described, we hold that the jury instructions, though erroneous, did not result in a plain error.

## IV. CONCLUSION

For the foregoing reasons, we will reverse the district court order of March 11, 2004, reversing the conviction and reinstate the judgment of conviction and sentence entered in the territorial court. We are aware, however, that in the district court Rosa argued as an alternative basis to reverse that the evidence was insufficient for the jury to find him guilty of first-degree murder. In view of its disposition of the appeal the district court did not reach this point and inasmuch as Rosa has not argued the insufficiency of the evidence point as an alternative basis to uphold the district court's result, the parties' briefs do not address whether the evidence was sufficient.[18] In the circumstances we will remand the case to the district court to allow Rosa to renew the sufficiency of the evidence argument but we do so without prejudice to the government being free to argue that by not raising the evidence issue in this court Rosa has waived it, a point on which we express no opinion. On the remand Rosa also may renew any other arguments that he raised in the district court subject again to the government being free to argue that Rosa has waived the contentions.

____

[18]The district court should have addressed the insufficiency of the evidence point regardless of its outcome predicated on the erroneous charge because if the evidence was insufficient a retrial on the first-degree murder charge would be barred on Double Jeopardy principles and the appropriate result would be to enter an acquittal on that charge. See Burks v. United States, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150-51 (1978); see also United States v. Cartwright, 359 F.3d 281, 291 (3d Cir. 2004). Thus, a reversal on the evidence point would limit the retrial to the lesser included offenses.