NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2553
_____

UNITED STATES OF AMERICA

v.

CARLOS JAMAL SMITH

Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-10-cr-00075-001)
District Judge:  Honorable David S. Cercone
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 17, 2013

Before:  SMITH, FISHER and CHAGARES, *Circuit Judges*.

(Filed: June 20, 2013)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Carlos Jamal Smith appeals from his judgment of conviction in the Western

District of Pennsylvania, arguing that the District Court erred in overruling his objection

under *Batson v. Kentucky*, 476 U.S. 79 (1986), and in failing to hold an evidentiary

hearing pursuant to *United States v. Starks*, 515 F.2d 112 (3d Cir. 1975). For the reasons stated below, we will affirm.

## I.

Because we write principally for the parties, we will set forth only the factual background and procedural history necessary to our analysis.

In a superseding indictment, Smith, an African American, was charged with one count of conspiring to maintain drug-involved premises in violation of 21 U.S.C. §§ 846 and 856(a)(1), and four counts of possession with intent to distribute and distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). All five counts alleged that the offenses were committed while Smith was on pre-trial release as provided by 18 U.S.C. § 3147. The charges were based on controlled buys of crack cocaine from Smith that were purportedly recorded on audio and video devices by confidential informant Frankie Turner in collaboration with Pennsylvania State Police Trooper Michael Poulos.

Before trial, Smith moved for a *Starks* hearing to challenge the admissibility of the recordings. The District Court granted the motion, ordering: "To the extent the parties are unable to stipulate as to the admissibility of the recordings the court will schedule a pretrial hearing to review the proffered recordings and issue rulings on the admissibility of the same thereafter." App. II at 62-63. Although the District Court subsequently conducted a pre-trial status conference and a pre-trial motion hearing, it never held a

2

*Starks* hearing. Smith, for his part, never again referenced his *Starks* request and did not object to the introduction of the recordings into evidence at his eventual trial.

During jury selection, thirty-two potential jurors, including three African Americans, were chosen from the venire. The District Court required the parties to exercise all of their peremptory strikes. *See United States v. Ruuska*, 883 F.2d 262, 266 (3d Cir. 1989) (describing "struck jury" system). After striking two jurors, including one African American, Juror Number 163, for race-neutral reasons,[1] the Government exercised its four remaining peremptory challenges by striking the last four potential jurors, including another African American, Juror Number 87, from the venire list. Smith raised a *Batson* objection, which the District Court overruled.

Smith was convicted on the conspiracy and two of the four distribution charges.[2] After trial, Smith filed multiple motions for judgment of acquittal, arguing, *inter alia*, that the District Court erred in failing to hold a *Starks* hearing. The District Court denied the motions, and Smith timely appealed.

## II.

The District Court had jurisdiction over Smith's case under 18 U.S.C. § 3231, and we have jurisdiction over his appeal under 28 U.S.C. § 1291.

---

[1] Smith does not appeal the District Court's finding that the Government exercised its peremptory challenge as to Juror Number 163 in a race-neutral manner consistent with *Batson v. Kentucky*, 476 U.S. 79 (1986).

[2] The jury was deadlocked on the other two distribution charges.

3

In analyzing Smith's *Batson* argument, we review for clear error the District Court's factual determination that discriminatory intent did not motivate the Government's peremptory strikes. *United States v. DeJesus*, 347 F.3d 500, 505 (3d Cir. 2003). In considering Smith's *Starks* claim, we review for an abuse of discretion the District Court's decision not to hold an evidentiary hearing. *United States v. Hines*, 628 F.3d 101, 104 (3d Cir. 2010). But if Smith forfeited his claim, we will review the District Court's decision for plain error, and if Smith waived his claim, we will not review the District Court's decision. *Gov't of the V.I. v. Rosa*, 399 F.3d 283, 290-91 (3d Cir. 2005).

III.

A.

Smith argues that the District Court erred in overruling his objection as to Juror Number 87 under *Batson*, which held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." 476 U.S. at 89. Overcoming the presumptive validity of a peremptory strike is a three-step process: (1) the defendant must make a *prima facie* showing that the strike was based on race; (2) the Government must state a race-neutral reason for the strike; and (3) the trial court must determine whether the strike was purposefully discriminatory. *DeJesus*, 347 F.3d at 506. The defendant bears the burden of persuasion at each step, but the Government shoulders the burden of production at the second step. *Lark v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 596, 619 (3d Cir. 2011).

4

At the first step, a court considers, among other factors, "how many members of the cognizable racial group are in the venire panel," and whether there is a "pattern of peremptory strikes" against those members. *Id.* at 620 (citation and quotation omitted). Before the District Court, Smith argued that the strike of Juror Number 87 was race-based because the Government challenged two out of the three African Americans in the jury pool. Since the Government does not contest the point, we will assume, without deciding, that the District Court correctly found that Smith made a *prima facie* showing of a *Batson* violation.

In step two, a court examines whether the Government's rationale is "facially race-neutral," regardless of whether it is "persuasive, or even plausible." *DeJesus*, 347 F.3d at 506. Before the District Court, the Government explained that it exercised its first two peremptory strikes for race-neutral reasons, and that it did not intend to use its last four challenges. But because it was required to use up all of its challenges, it exercised its leftover strikes "straight from the bottom [of the jury list] up," thereby removing Juror Number 87. App. III at 213. Because no "discriminatory intent [wa]s inherent" in the Government's justification, the District Court did not clearly err in finding that it was race-neutral on its face. *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (plurality opinion).

Smith's appeal focuses on the third step, during which a court determines whether the Government's proffered reasons are pretextual by consulting "all of the circumstances

5

that bear upon the issue of racial animosity," *Coombs v. DiGuglielmo*, 616 F.3d 255, 262 (3d Cir. 2010) (quotation omitted), including the relative rates of peremptory strikes "compared to the final composition of the jury," *id.* (citation omitted). Smith argues that the Government's approach disproportionately affected African Americans, and that the District Court failed to analyze whether striking jurors from the top or middle of the jury list would have yielded a different result.

However, as the District Court pointed out, the Government struck four Caucasians, three of whom were challenged for the same reason as Juror Number 87. *See id.* (explaining that evidence of purposeful discrimination exists where the Government's proffered reason applies equally to two otherwise similar panelists of different races, only one of whom is struck by the Government). The District Court also demonstrated "some engagement with the evidence," *id.* (quotation omitted), reasoning that it was "more logical" to exclude jurors from the bottom of the list than from the top or middle thereof. App. III at 216. The District Court did not clearly err in finding that the Government's strike of Juror Number 87 was not purposefully discriminatory.

## B.

Smith also claims that the District Court erred in failing to hold a hearing on the admissibility of the recordings pursuant to *Starks*, where we held that "the burden is on the government to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings." 515 F.2d at 121 (quotation omitted).

6

The Government counters that Smith waived his right to a *Starks* hearing. The District Court agreed with the Government, ruling, in response to Smith's motions for judgment of acquittal, that he waived his right to a *Starks* hearing by making "a strategic decision to capitalize on the nature and quality of the video and audio recordings as part of his defense at trial." App. II at 116.

"[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation omitted). The record reflects that before trial, Smith moved for a *Starks* hearing, showing that he was aware of his right to challenge the admissibility of the recordings. The District Court granted Smith's *Starks* motion "[t]o the extent the parties [we]re unable to stipulate as to the admissibility of the recordings." App. II at 62. But Smith did not mention his *Starks* motion during the later pre-trial status conference that he requested or the pre-trial hearing on his unrelated motion in limine. Then, at trial, he explicitly declined to object to the introduction of the recordings. App. III at 336. Indeed, he strategically relied on the recordings to cross examine Trooper Poulos, *id.* at 356-62, demonstrating his abandonment of his right to a *Starks* hearing. *See Rosa*, 399 F.3d at 291 (recognizing waiver where a defendant refrains from objecting for tactical reasons). In these circumstances, we conclude that Smith waived his right to a *Starks* hearing.

## IV.

For the reasons stated above, we will affirm the judgment of conviction.