**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4404
_____

TRI-ARC FINANCIAL SERVICES, INC.,

Appellant

v.

EVANSTON INSURANCE COMPANY;
MARKEL SERVICE, INCORPORATED
_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(D.C. No. 2-16-cv-02681)
District Judge:  Hon. R. Barclay Surrick

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 5, 2018

Before:  CHAGARES, SCIRICA, and COWEN, <u>Circuit</u> <u>Judges</u>.

(Filed: February 15, 2018)

_____

OPINION*
_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Plaintiff Tri-Arc Financial Services, Inc. ("Tri-Arc") appeals from the dismissal of its lawsuit against Evanston Insurance Company and Markel Service, Inc. (collectively "Evanston") seeking a declaratory judgment that Evanston — Tri-Arc's professional liability insurer — was required to defend Tri-Arc in a third-party lawsuit that was brought against Tri-Arc. On appeal, Tri-Arc raises two bases upon which to reverse the District Court's dismissal, neither of which were presented to the District Court for consideration. Because we conclude that Tri-Arc waived both arguments, we will affirm.

## I.[1]

We write for the parties and so recount only the facts necessary to our decision. Glenn Fischer was a Tri-Arc partner, who, purporting to represent the company, sold phony insurance policies supposedly from Wesco Insurance Company and Amtrust Financial Services, Inc. (collectively, "Wesco"). Fischer then absconded with the premium payments. One of the victims of Fischer's scheme was Vehicle Leasing II, LP ("Vehicle Leasing"), who paid over a million dollars in supposed premium payments to Fischer before learning that no policy had ever been issued to it. Vehicle Leasing filed a lawsuit against Wesco, which in turn filed a third party complaint against Fischer and Tri-Arc, asserting that Fischer and Tri-Arc were the liable parties, or at the very least that they were liable to Wesco for indemnity and contribution. Upon being notified of the

---

[1] The factual recitation is derived from Wesco's First Amended Third-Party Petition. Appendix ("App.") 495–506. For the purposes of this appeal, we assume these facts to be true. See, e.g., Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

2

lawsuit, Tri-Arc made a demand upon its own insurer, Evanston, who refused to defend Tri-Arc in the lawsuit. In support, Evanston cited Exclusion F in the insurance policy for any claims related to premium payments.[2]

Tri-Arc then filed a lawsuit against Evanston in the Montgomery County Court of Common Pleas, and Evanston removed the case to the United States District Court for the Eastern District of Pennsylvania. Evanston filed a motion to dismiss, which the District Court construed as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Tri-Arc opposed the motion, contending only that Wesco's — and by extension Vehicle Leasing's — claims against Tri-Arc did not fall within Exclusion F because no insurance policy was ever issued. Tri-Arc reasoned that Vehicle Leasing's fraudulently induced payments, untethered to any insurance contract, cannot constitute premiums. The District Court rejected this argument on the basis that Vehicle Leasing's claim was predicated on seeking repayment of what it thought were premium payments, and "if the underlying complaint asserts a claim for lost premiums, Exclusion F applies, regardless of how the underlying claim is characterized." App. 9. The District Court accordingly granted Evanston's motion and ordered the case closed. Tri-Arc timely appealed.

---

[2] As relevant, Exclusion F states that "[t]he policy does not apply to . . . any Claim for . . . premiums . . . ." App. 99–100.

II.[3]

Tri-Arc's primary argument on appeal — that the premium exclusion clause is ambiguous because it does not define "premium" — was not raised below. On the contrary, Tri-Arc made precisely the opposite argument before the District Court, asserting in effect that the definition of "premium" is perfectly clear but that the policy's premium exclusion was inapplicable because the payments to Fischer, which were untethered to an actual insurance contract, "cannot constitute premium payments." Appendix ("App.") 391–92 ("For almost two centuries the meaning [of a premium] has not changed."). On appeal, Tri-Arc attempts to swap horses midstream, arguing that the problem is not that the payments cannot count as premiums, but that "premium" in the contract is ambiguous because it does not define whether it excludes coverage for a premium that is constructively received. Tri-Arc Br. 31. The word "ambiguous" does not even appear in the brief that Tri-Arc submitted to the District Court in opposition to Evanston's motion to dismiss, and Tri-Arc gave no indication below that its argument turned on whether Tri-Arc should be considered to have received the payment. Rather, it relied solely upon the assertion that, whether or not received, the payments were not premium payments. See App. 9 ("[Tri-Arc] contends that the premium exclusion does not apply to the underlying complaint because no insurance policy existed, and consequently no premiums ever existed."). The District Court was therefore not given

_____

[3] The District Court had jurisdiction under 28 U.S.C. § 1332, and we have appellate jurisdiction under 28 U.S.C. § 1291.

notice of this argument and so never addressed whether the word "premium" was itself ambiguous in the context of the insurance contract.[4]

We are therefore "confronted with a situation in which the district court made a . . . ruling on the basis of the arguments raised by [Tri-Arc in its motion papers], but we are urged to reverse on the basis of another argument not raised before" that court. Caisson Corp. v. Ingersoll-Rand Co., 622 F.2d 672, 680 (3d Cir. 1980). We are not, however, a court of first instance, so as a general matter we refuse to consider arguments not preserved below. Id. And where the unpreserved argument was waived, meaning intentionally abandoned, we have no authority to address the argument. See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 146–47 & n.7 (3d Cir. 2017). Here, Tri-Arc elected to pursue an argument before the District Court that, if not strictly incompatible with the argument it presses on appeal, is at least at odds with it. The nature of the claim makes clear to us that Tri-Arc's failure to pursue the instant ambiguity argument below was a conscious or tactical choice made in favor of the argument that it did make, as opposed to an inadvertent omission, and thus constitutes a waiver.[5] Cf. Gov't of V.I. v. Rosa, 399 F.3d 283, 291 (3d Cir. 2005). Because the District Court was not afforded the opportunity to address Tri-Arc's ambiguity argument, we will not pass

---

[4] The District Court did address whether the policy exclusion's scope covered the claim at issue, but resolved that question in the affirmative based on the clause's use of the word "any" to modify "Claim for . . . premiums." The District Court did not assess whether the term "premium" was itself ambiguous, but rather found that the clause as a whole was plainly unambiguous in its intent to cover any premium-related claim. App. 7.

[5] This conclusion is strengthened by the fact that Tri-Arc does not attempt to argue both the preserved and unpreserved arguments on appeal, but instead drops the previously stated argument in favor of the unpreserved ambiguity argument.

on the argument now.  See Keenan v. City of Philadelphia, 983 F.2d 459, 471 (3d Cir.

1992) ("[T]he crucial question regarding waiver is whether defendants presented the

argument with sufficient specificity to alert the district court.").[6]

Even if the failure to raise the ambiguity argument below were inadvertent, such

that the argument was merely forfeited and thus could theoretically be revived on appeal,

we would decline to do so.  "[W]e will not reach a forfeited issue in civil cases absent

truly 'exceptional circumstances,'" such as where "the public interest requires that the

issue[s] be heard or when a manifest injustice would result from the failure to consider

the new issue[s]."  Barna, 877 F.3d at 147 (first quoting Brown v. Philip Morris Inc., 250

F.3d 789, 799 (3d Cir. 2001); then quoting United States v. Anthony Dell'Aquilla,

Enters. & Subsidiaries, 150 F.3d 329, 335 (3d Cir. 1998)).  Tri-Arc's assertion that the

particular insurance contract that it entered into with Evanston is ambiguous for want of a

specific definition of the word "premium," a word that Tri-Arc asserted previously in this

litigation has had the same clear definition from time immemorial, satisfies neither of

---

[6] To the extent that Tri-Arc's "reasonable expectation of coverage" argument, Tri-Arc Br. 22, is intended as an independent basis for reversal apart from the ambiguity argument, it, too, was not raised before the District Court, so we do not consider the argument.  Tri-Arc appears to contend that the argument was raised in its brief in opposition to Evanston's motion to dismiss, but no such discussion can be found there. The closest Tri-Arc comes to such an argument is that Evanston had previously agreed to defend Tri-Arc in a similar lawsuit.  However, that argument did not contend that by defending Tri-Arc in a similar case, Evanston had created an expectation of coverage in the instant case.  Nor is it clear from the record that Tri-Arc entered into the insurance policy that it is suing under only after the prior lawsuit, such that any expectation developed based on that suit could have informed Tri-Arc's understanding of the policy when entered into.  Regardless, because these issues were not fairly presented to the District Court, we do not address them now.

these "narrow exception[s]." Id.; Cf. Bagot v. Ashcroft, 398 F.3d 252, 256 (3d Cir. 2005) ("This court may consider a pure question of law even if not raised below where refusal to reach the issue would result in a miscarriage of justice or where the issue's resolution is of public importance." (quoting Loretangeli v. Critelli, 853 F.2d 186, 189–90 n. 5 (3d Cir. 1988))).

III.

Tri-Arc argues in the alternative that, even if the term "premium" is not ambiguous in the contract, the exclusion nonetheless does not control because the lawsuit against Tri-Arc also seeks additional forms of damages. Tri-Arc asserts that although Wesco's amended third-party complaint against Tri-Arc asserted that Vehicle Leasing was seeking from Wesco "to recover in damages the exact same amount which they were defrauded by the Third-Party Defendants" (i.e. the amount of the premium payments), App. 502, both the Vehicle Leasing complaint and Wesco's complaint assert multiple theories of liability, including statutory and tort-based claims that might result in a damages award above premium amount. Tri-Arc Br. 33–35, 40. Because the parties agree that Evanston's duty to defend is triggered where the complaint seeks damages beyond the mere repayment of premiums, Tri-Arc asserts that Evanston had a duty to defend and provide coverage in this case. We need not address this alternative argument, either, because it also was not raised before the District Court.

Tri-Arc's brief in opposition to Evanston's motion to dismiss described the underlying Vehicle Leasing and Wesco complaints as respectively seeking repayment and indemnification or apportionment of the premium payments that Vehicle Leasing

7

paid to Fischer. Tri-Arc notes, for instance, that the "crux" of Vehicle Leasing's complaint was that it had paid Fischer for insurance that it never received and that Wesco in turn included Tri-Arc seeking to have Wesco and Tri-Arc's respective "liabilities and percentage of responsibility be determined by the jury." App. 386. The brief goes on to explain that Evanston denied Tri-Arc's demand for coverage on the basis of the premium exclusion and that Tri-Arc sent a demand letter that Evanston immediately provide coverage. App. 387. That demand letter, for its part, does not assert that coverage is required by virtue of multiple damages claims. Rather, it reiterates the argument presented to the District Court, that "the 'origin of the damages' i[s] the fraudulent inducement . . . to obtain funds[,] there never was any insurance policy[,] [t]here was never any payment of premiums" and that "a plain and simple reading of the pleadings shows that there were no premiums paid." App. 197. Finally, in its argument section in its brief before the District Court, Tri-Arc argues only that the premium exclusion does not apply because — based on Tri-Arc's sole argument, both to Evanston directly and the District Court — these fraud-induced payments were not "premiums." App. 391–93. There is no mention of an alternative argument in the event that the District Court found that the exclusion did apply.

We reiterate that "[t]his court has consistently held that it will not consider issues that are raised for the first time on appeal." Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994). This rule is especially applicable here, where Tri-Arc — both prior to and during the course of this litigation — had steadfastly adhered to a single theory of liability, upon which Evanston staked its defense and upon which the District Court

8

ruled, only to append this alternative theory that should have been equally apparent in the first instance. Moreover, Tri-Arc's argument on appeal relies in part on its assertion that Vehicle Leasing could not possibly have been seeking only reimbursement of the premium payments, because Vehicle Leasing had already entered into a settlement with Fischer for the full repayment of the premium and so any attempt to further recoup that payment would be a double-recovery. Tri-Arc Br. 33–34. Evanston replies by asserting that, although Fischer had reached a settlement, he has not actually repaid the amount, but there is no clear evidence in the record on that point. Evanston's defense therefore would have benefited from the ability to develop the record before the District Court in response to Tri-Arc's full panoply of arguments. Further, the District Court had no opportunity to consider the arguments. We conclude therefore that Tri-Arc's alternative argument is waived, and we will not consider it in the first instance on appeal.

IV.

For the foregoing reasons, we will affirm the Order of the District Court.