**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3149
_____

UNITED STATES OF AMERICA

v.

TEHRON MOMENT, a/k/a RON

TEHRON MOMENT,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.:  2-15-cr-00283-001)
District Judge:  Honorable Michael M. Baylson

Submitted under Third Circuit L.A.R. 34.1(a)
on September 14, 2018

(Opinion filed:  October 5, 2018)

Before:  JORDAN, VANASKIE and RENDELL, Circuit Judges

**RENDELL**, <u>Circuit Judge</u>:

Tehron Moment urges that the District Court erred in sentencing him following a jury verdict that convicted him for a lesser quantity of cocaine than the quantity charged by the government. Specifically, he complains of the District Court's quantity determination, its consideration of acquitted conduct, and its failure to explain its sentence. Finding no error, we will affirm the District Court's sentence.[1]

I.

In 2009, a coalition of law enforcement agencies launched Operation Last Summer. The goal was to uncover a ring of suspected cocaine traffickers in Delaware County and the surrounding areas. The investigation started with one known dealer. As it progressed—through controlled buys, wiretaps, and surveillance—authorities zeroed in on the hub of the operation: Michael Tucker. A wiretap on Tucker's phone then revealed who was buying and distributing his supply. Among those identified in the Tucker wiretap was Appellant Tehron Moment. Tucker quickly began cooperating with

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court had subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231. We have jurisdiction to hear appeals from the District Court pursuant to 28 U.S.C. § 1291 and to review sentences delivered by the District Court pursuant to 18 U.S.C. § 3742.

authorities, revealing the details of his relationships with his customers, including Moment. **App. at 36-39.**

In 2015, a federal grand jury indicted Moment on a single count for conspiracy to distribute five kilograms or more of cocaine. 21 U.S.C. § 846. In 2017, Moment proceeded to trial in the U.S. District Court for the Eastern District of Pennsylvania. At trial, Tucker testified that Moment was a regular customer who typically purchased one kilogram of cocaine every two weeks during the time between 2008 and 2010. Tucker's testimony was supported by a bevy of additional evidence: toll records and hard data from Tucker and Moment's personal and burner phones, wiretaps of those phones (**Supp. App. at 10-29**), and surveillance, both visual and via precision location data, of the suspects' residences and vehicles. **Supp. App. at 9-10, 29-30**.

In its closing argument, the government argued that the evidence established that Moment was responsible for the purchase and distribution of 46 kilograms of cocaine—two kilograms per month during the period specified by Tucker. **App. at 241**. Moment conceded that he was responsible for four kilograms of cocaine purchased from Tucker in September and October of 2010—the purchases discussed during calls captured on the wiretap—but argued that any other purchases could not be proved beyond a reasonable doubt. **App. at 245-47**. The jury agreed. While it declined to convict Moment on the charge of conspiracy to distribute five kilograms or more of cocaine, it returned a guilty verdict for the lesser included offense of conspiracy to distribute 500 grams or more of cocaine. 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B).

In its presentence report, the Probation Office applied a base offense level of 28; this base level reflected Moment's involvement in the distribution and possession of between 3.5 and 5 kilograms of cocaine. **PSR ¶ 28**. It also added one point each for two prior convictions, and two points for committing the instant offense while on probation. Moment's criminal history score of four placed him in criminal history category III. **PSR ¶ 37-42**. Based on these calculations, the Probation Office determined that the guideline imprisonment range was 97 to 121 months. **PSR ¶ 81**.

Moment and the government each stated one objection to the report. The government argued that Moment's responsibility for 46 kilograms of cocaine, even if not proved beyond a reasonable doubt, could be established by a preponderance of the evidence and thus taken into consideration during sentencing; this would result in a base offense level of 32 instead of 28. Moment disputed that he committed the instant offense while on probation for a prior conviction. **Addendum to PSR**.

The District Court heard argument on both of these objections at the sentencing hearing. First, it overruled Moment's objection, stating that the testimony at trial and Moment's proffer statement sufficed to establish that Moment did, in fact, commit part of the instant offense while on probation. **App. at 304-05**. Then it sustained the government's objection to the base offense level. The District Court stated that the jury's verdict was "not necessarily a finding that it was necessarily less than 5 kilograms." App. at 313. Rather, it represented only that the jury "had a reasonable doubt as to whether it was more than 5 kilograms." App. at 313. Because of the lower evidentiary standard at sentencing, the court applied a base offense level of 32, which applies to

4

offenses involving between 15 and 50 kilograms of cocaine. This resulted in a guideline imprisonment range of 151 to 188 months. Taking into consideration the jury's verdict, however, the court also applied a downward variance that "would render a sentence below the sentencing level that would apply for level 32." App. at 313-14. The end result: the court sentenced Moment to a term of 110 months in prison followed by a period of five years supervised release. **App. at 331**.

## II.

Moment makes three claims on appeal regarding his sentence: *first*, he argues that the District Court erred in making its drug quantity determination; *second*, he argues that the court procedurally erred by failing to adequately explain its sentence; and *third*, he argues that his sentence was based on acquitted conduct and thus violated his constitutional rights under the Fifth and Sixth Amendments. We address these claims in turn.

The District Court's determination regarding the amount of cocaine for which Moment was responsible is an issue of fact. We review findings of fact that are relevant to sentencing, such as this, for clear error. *See United States v. Grier*, 475 F.3d 556, 569-570 (3d Cir. 2007) (en banc). "A finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 570 (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993)). If we find clear error in the Court's factual finding, we may, "subject to the

doctrines of plain and harmless error,… remand to the district court for resentencing."

*Id.*

In the District Court, the government bore the burden of proving facts relevant to sentencing by a preponderance of the evidence. *See United States v. Paulino*, 996 F.2d 1541, 1545 (3d Cir. 1993). Both the government and Moment agree that the Court could consider all relevant conduct in making its determination, including conduct underlying an acquitted charge.[2] *See United States v. Watts*, 519 U.S. 148 (1997). The parties disagree, however, as to whether the government met its burden in establishing the greater drug quantity by a preponderance of the evidence. Moment argues that the only evidence of a drug quantity higher than four kilograms is the testimony of Michael Tucker, a cooperating witness who, he asserts, was found to be less than credible by the jury. The government, on the other hand, argues that Tucker was a reliable witness, that his testimony was credible, and that it was corroborated by other evidence presented at trial and at the sentencing hearing.

As an initial matter, the District Court did not "substitute its own credibility assessment for that of the jury," as Moment argues. Moment Br. at 18. Moment's contention that the jury must have had doubts about Tucker's credibility is purely speculative. We do not know why the jury returned a conviction for the lesser included offense and not the charged offense. We do know, however, that the evidentiary standard is lower for establishing facts during sentencing than it is at trial. As the government

---

[2] Moment argues in the alternative, however, that we should reconsider this rule. *See infra* at 9.

observed in its brief, a number of our sister circuits have acknowledged, consistent with *Watts*, that "there is no logical inconsistency in determining that a preponderance of the evidence supports a finding about which there remains a reasonable doubt." *United States v. Vaughn*, 430 F.3d 518, 527 (2d Cir. 2005); *see also United States v. Solorio*, 337 F.3d 580, 597 n.14 (6th Cir. 2003). Far from usurping the jury's authority to make credibility determinations, the District Court properly acknowledged different evidentiary standards in different contexts.

Turning to the evidence presented at sentencing, we conclude that the District Court did not commit clear error in making its drug quantity determination. The government produced ample evidence to establish this fact by a preponderance of the evidence. First and foremost, Tucker's testimony describes Moment as a regular customer whose purchases totaled 46 kilograms of cocaine over a two year period. We see no reason to suggest that this testimony is not credible; Tucker fully cooperated with authorities upon his arrest, his testimony was consistent throughout, and Moment has offered no specific evidence to contradict his testimony. Second, the Tucker wiretap, which lasted for two months in 2010, showed not only that Moment purchased four kilograms of cocaine during that time but also that the two had an established business relationship. Third, phone records showed over 100 contacts between the two from July 2010 to November 2010. *See* App. at 233; Government Br. at 22-24. Moment also argues that the District Court improperly relied on his proffer letter for its finding regarding drug quantity, as it was only to be used if there were inconsistencies at trial. But the District Court only referenced the proffer statement to decide whether Moment

7

committed any part of the instant offense while on probation (*see* App. at 303-305), an issue that Moment did not appeal to this court.

We have previously upheld a drug quantity determination made in significant reliance on the testimony of a cooperating witness, and we find no reason to find otherwise here. *See United States v. Freeman*, 763 F.3d 322, 338 (3d Cir. 2014) ("Even without corroboration, we find no error in the District Court's reliance on [the cooperating witness's] testimony."). Moreover, even if we were convinced that, "had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently," we will not reverse the District Court so long as its "account of the evidence is plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (U.S. 1985). The District Court's account is, at a minimum, plausible.

Moment also argues that the District Court failed to adequately explain its sentence. However, Moment did not object to the District Court's explanation at the sentencing hearing. *See* App. at 331. In circumstances like these, where a procedural error was not objected to and thus not properly preserved, the burden is on the challenging party to establish that the court committed plain error. *See United States v. Flores-Meija*, 759 F.3d 253, 256 (3d Cir. 2014). Moment faces a high bar to establish plain error. Four conditions must be met: "there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights." *Johnson v. United States*, 520 U.S. 461, 467 (1993) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)) (internal quotations omitted). If these first three conditions are met, an appellate court may, but is not required to,

8

award relief if (4) the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

Here, our analysis ends at step one: the District Court did not err. There were only two issues to which the parties objected in advance of the sentencing hearing. The District Court heard argument from both sides on both issues. The Court carefully weighed the evidence offered at the hearing and then took time at the hearing's conclusion to explain its ruling. *See* App. at 293-332. Even if the District Court had erred, Moment would need to show that the error affected substantial rights, *i.e.*, that it "affected the outcome of the district court proceedings." *Gov't of Virgin Islands v. Rosa*, 399 F.3d 283, 293 (3d Cir. 2005) (quoting *Olano*, 507 U.S. at 734). Assuming, for the sake of argument, that the District Court did err by failing to adequately explain its sentence, the sentence (110 months) is still within the range that Moment proposes (97 to 121 months). Accordingly, we cannot find plain error in the District Court's explanation of Moment's sentence.

Finally, Moment argues that his constitutional rights under the Fifth and Sixth Amendments were violated when the District Court considered conduct underlying an acquitted charge when determining his sentence. But, as Moment acknowledges, the Supreme Court has already rejected this theory in *United States v. Watts*. 519 U.S. 148, 157 (1997); *see also United States v. Ciavarella*. 716 F.3d 705, 735-36 (3d Cir. 2013). Therefore, we are bound by that decision, which controls this claim.

### III.

For the forgoing reasons, we affirm the sentence imposed by the District Court.

9